Munns, Appellant, *v.* Easthome Furniture Industries, Inc.

Argued June 15, 1960. Before RHODES, P. J., GUN-THER, WRIGHT, WOODSIDE, ERVIN, WATKINS, and MONT-GOMERY, JJ.

*Edgar R. Barnes, Jr.,* with him *Arnold, Bricker, Beyer & Barnes,* for appellant.

*Ralph M. Barley,* with him *Barley, Snyder, Cooper & Mueller,* for appellees.

OPINION BY ERVIN, J., September 16, 1960:

In this workmen's compensation case the referee and the board made an award to the claimant for 50 per cent partial disability. On appeal to the court below the award was disallowed. The claimant appealed.

The record discloses that on September 26, 1957 the claimant was using a two to three pound hand stapler driven by compressed air in stapling cotton wadding to long pieces of cardboard. As she was doing her work an extra strong gush of air came out of the stapler causing it to glance off the side of the table. Claimant immediately felt a twist or sprain in her left arm and a weakness. Shortly after this she felt a numbness in her fingers and about 2:00 a.m. the next day she was awakened with pain in the palm of her hand and in her shoulder, and her thumb and forefinger were numb. The claimant was transferred back to her regular job in the sewing room the same day the above incident occurred and continued working until she went to the hospital on December 29, 1957. From September 26, 1957 to December 29, 1957 she continued to work but had pain which increased and caused her to lose three days' work.

The claimant was in the hospital until January 22, 1958. During her stay in the hospital she received physiotherapy treatment and was placed in traction, first with 25 pound weights and increasing to 40

pounds. These treatments were continued at the hospital as an out-patient and at home after she left the hospital. The claimant has not worked since she entered the hospital on December 29, 1957 and at the time of the hearing on September 17, 1958 she testified that she was incapacitated to the extent that she could not lift and tired easily. She continues to have pain in her neck and left side, a burning in her shoulder, weakness in her arm and numbness in her hands. She never had any such sensations before September 26, 1957.

When the pains continued claimant reported them to her employer's personnel manager and he arranged for an examination by Dr. Gilbert Clime. At Dr. Clime's suggestion she was first examined by Dr. John L. Polcyn, a neurosurgeon, on October 3, 1957, who diagnosed her complaint as functional. Claimant's pains continued and she returned to Dr. Polcyn on December 11, 1957, when he changed his diagnosis of a functional disorder and recommended hospitalization for a myelogram and x-rays of the cervical spine. The myelogram revealed a defect in her cervical region that was compatible with a ruptured disc. Dr. Polcyn testified further that the experience with the stapler described by the claimant could have been the cause of her condition. In answer to the question, "Do you feel it caused that [ruptured disc] in this case?" Dr. Polcyn replied, "Since there were no complaints prior to that, it was a very good possibility it could have." The medical prognosis was that traction might effect a cure but unless the ruptured disc is removed the claimant is likely to continue to have pain. At the time of her discharge from the hospital, which was the last time Dr. Polcyn saw her, the claimant was not in his opinion totally disabled but could do limited work not involving heavy lifting.

Dr. Tom B. Metzger, who testified for the defendant, admitted that it was possible that the slipping of the stapler off the table could have caused the ruptured disc but he questioned it.

All parties to this matter have agreed that the slipping of the stapler off the edge of the table due to a sudden gush of compressed air constituted an accident in the ordinary lay sense of the term. The court below was also of the same opinion. That leaves for determination the sole question of whether it is necessary to show a causal connection between the accident and the injury by expert medical testimony or whether the injury was so immediate and directly or naturally and probably the consequence of the accident that medical testimony of a causal connection is unnecessary. When it is necessary to show a causal connection by medical testimony "the medical witness must testify, not that the injury or condition might have, or even possibly did, come from the assigned cause, but that in his professional opinion the result in question did come from the assigned cause. . . ." *Washko v. Ruckno, Inc.*, 180 Pa. Superior Ct. 606, 609, 121 A. 2d 456; *Grentz v. Danny's Restaurant*, 187 Pa. Superior Ct. 625, 145 A. 2d 883. The medical testimony in this case fell short of the requirements heretofore set forth by us. This, however, is not fatal to the claimant's position because we feel that this is the type of case where medical testimony is not necessary. Where the injuries are so immediate and directly, or naturally and probably, the result of an accident, the board is not required to depend alone upon medical testimony to find a causal connection: *Hager v. Bethlehem Mines Corp.*, 183 Pa. Superior Ct. 498, 501, 133 A. 2d 567. While the claimant did not immediately feel pain in her neck following the accident, she did immediately feel a twist or sprain in her arm and shortly after the accident she felt pain

and numbness in her fingers. During the night after the accident happened she did feel pain in the palm of her hand and in her shoulder. This history clearly reveals that the pain was spreading; having spread from the palm of her hand to her shoulder it had very little distance to go to reach the neck. It must be remembered that the claimant never had any sensations of this character prior to the accident.

Since there was an award in her favor the claimant is entitled to have the evidence examined in the light most favorable to her and she is entitled to the benefit of every reasonable inference deducible therefrom: *Santillo v. Pittsburgh Railways Co.,* 181 Pa. Superior Ct. 266, 124 A. 2d 657.

We believe that the findings of the board are supported by competent evidence and that the court below should not have substituted its findings for those of the board.

The order of the court below is reversed and the order of the Workmen's Compensation Board is reinstated and affirmed.