Smith, Appellant, *v.* German.

48

Argued January 14, 1969. Before JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*David H. Kubert,* for appellant.

*Frederick E. Smith,* with him *Ross, Smith & Renninger,* for appellee.

OPINION BY MR. JUSTICE ROBERTS, April 23, 1969:

This appeal grew out of a suit by appellant and countersuit by appellee over injuries both sustained in a serious auto accident in 1962. The jury concluded that both were negligent and therefore relief was denied to both. This appeal is taken only on behalf of litigant Smith who presents several reasons why he is entitled to a new trial in the action in which he is a plaintiff. Since we conclude that one of these grounds is indeed meritorious, we vacate the judgment of the court below and remand for a new trial in Smith's action against German.

One of the elements of damage claimed by Smith was that he underwent a severe personality change as a result of the injuries sustained in the accident. In order to support this claim, all of the doctors involved testified that it was their conclusion that Smith suffered from anoxia, the cutting off or reduction of the oxygen supply to certain parts of the brain. Further, as the trial court summarized this aspect of the evidence in the charge: "There was evidence that this brain injury caused a temporary psychosis while he was in the hospital, that he was paranoid and schizophrenic . . . in other words he was psychotic and completely insane, ate soap, ate containers of milk . . . and

did other things which only an insane person would do. There was evidence of personality change."

The fact that the personality change was caused by the anoxia was strongly contested by the appellee. It was argued in defense that the personality change (which everybody apparently agreed was present) was due to appellant's marital difficulties and did not result from the accident. In order to support this contention, appellee read into the record over specific objection certain testimony which appellant presented at his own divorce proceeding in 1964. This testimony tended to show that Mr. Smith was (either justifiably or unjustifiably) suspicious that his wife was having an affair with a neighbor, and that his knowledge of this affair upset him greatly. Appellant claims (1) that this evidence was highly prejudicial and (2) that without some competent medical testimony connecting the marital difficulties outlined in the divorce proceeding with appellant's personality change, the jury should not have been allowed to infer that these difficulties caused the personality change. We agree with both of his claims.

The law of this Commonwealth is well settled as to when medical testimony will be required to establish a causal connection between the event demonstrated and the result sought to be proved. Though most of the cases deal with plaintiffs who wish to show that a certain event caused a given injury, the rules are equally applicable when a defendant seeks to disprove the causal connection (the automobile accident) presented by the plaintiff by proving one (the marital difficulties) of his own. Thus in *Florig v. Sears, Roebuck & Co.*, 388 Pa. 419, 130 A. 2d 445 (1957), this Court held "Where there is no obvious causal relationship, unequivocal *medical* testimony is necessary to establish the causal connection." See *Auerbach v. PTC*, 421

Pa. 594, 221 A. 2d 163 (1966); *Dornon v. Johnston,* 421 Pa. 58, 218 A. 2d 808 (1966). This test has resulted in medical testimony being required to prove the causal connection between a heart attack and heavy exertion thirty minutes earlier, *Washko v. Ruckno, Inc.,* 180 Pa. Superior Ct. 606, 121 A. 2d 456 (1956), between a paralytic stroke and being struck by a swinging door, *Fink v. Sheldon Axle Co.,* 270 Pa. 476, 113 Atl. 666 (1921), between a refracture and failure on the part of the attending physician to be as attentive as his patient requested, *Dornon v. Johnston,* supra.

But where "the disability complained of is the natural and probable result of the injuries, the fact-finding body may be permitted to so find, even in the entire absence of expert opinion." *Florig v. Sears, Roebuck & Co.,* supra at 424, 130 A. 2d at 447. The two must be "so closely connected and so readily apparent that a layman could diagnose (except by guessing) the causal connection." Id. See *Tabuteau v. London G. & A. Co.,* 351 Pa. 183, 40 A. 2d 396 (1945); *Mohr v. Desimone & Sayers,* 110 Pa. Superior Ct. 44, 167 Atl. 504 (1933).

In our view the instant case clearly comes within the *Florig* line of cases. While it is true that the jury could infer from the testimony presented that the appellant was upset, it seems entirely outside their capability to infer that the marital discord recited in the excerpt from the divorce testimony produced the severe personality disorders which all admit appellant had undergone. We could hardly say that the causal connection between appellant's marital difficulties and the alleged paranoia and schizophrenia is "so closely connected and so readily apparent" that we would allow a jury to reach that conclusion without *some* expert opinion to aid them. Rather, this is the type of case where the causal connection is anything but obvious,

where the disability is not the natural and probable result of the injuries.

Just as the plaintiff was required to offer expert testimony in order to establish the medical connection between the injuries arising from the accident and the personality change, so too is such expert testimony required by the party seeking to establish that it was not the injury but some other factor which caused the change. This is clearly required by our case law, because the causation here "involves explanations and inferences not within the range of ordinary training, knowledge, intelligence and experience." *Commonwealth v. Nasuti*, 385 Pa. 436, 443, 123 A. 2d 435, 438 (1956). Therefore, the admission of this testimony was improper without any expert medical evidence. Because we also consider the admission of this evidence highly prejudicial, we think it is necessary to order a new trial, despite the jury's conclusion that appellant was negligent. This will permit the jury to pass on the relevant issues without the presence of such objectionable evidence.

Judgment vacated and a new trial awarded.

Mr. Justice COHEN dissents.

Mr. Chief Justice BELL took no part in the consideration or decision of this case.