448 A.2d 605

**Nicholas LATTANZE and Theresa Cappelli, Appellants,**

v.

**Thomas F. SILVERSTRINI, Appellee.**

Superior Court of Pennsylvania.

Argued Feb. 1, 1982.

Filed July 23, 1982.

218

Edward L. McCandless, Philadelphia, for appellants.

William H. Kinkead, Norristown, for appellee.

Before WICKERSHAM, ROWLEY and McEWEN, JJ.

ROWLEY, Judge:

This is an appeal from a judgment entered in favor of appellee in appellant's trespass action seeking damages for personal injuries claimed to have resulted from a motor vehicle accident.[1] Appellant contends, inter alia, that the trial court erred in directing a verdict for the appellee and denying his motion for a new trial.[2] We agree and, therefore, reverse and remand for a new trial.

1. This is the second time this case has been before this Court for review. The first appeal was quashed because the verdict had not been reduced to a final judgment. See *Lattanze v. Silverstrini*, 287 Pa.Super. 263, 429 A.2d 1201 (1981). Final judgment was entered on July 1, 1981 and this appeal was filed.

2. Appellant also contends the trial court erred in sustaining objections to two questions dealing with the issue of causation that he asked his medical expert. In light of our resolution of the first issue raised by the appellant, we will not consider this question.

In an appeal from a directed verdict, the Appellate Court must consider the evidence and all reasonable inferences in the light most favorable to the appellant. *Litwinko v. Gray*, 267 Pa.Super. 541, 407 A.2d 42 (1979). If a jury could have reasonably concluded on the basis of that evidence and those inferences that liability should rest with the appellee, then the decision to direct a verdict was in error. See *Cox v. Equitable Gas Co.*, 227 Pa.Super. 153, 324 A.2d 516 (1974). If there is any room for doubt, the trial court should not direct a verdict. *Stephens v. Carrara*, 265 Pa.Super. 102, 401 A.2d 821 (1979).

The evidence presented at trial may be summarized as follows: On July 26, 1975, appellant Nicholas Lattanze, his friend Theresa Cappelli,[3] and several children were involved in an auto accident with a van driven by appellee. The accident occurred when the appellee made a right turn after signaling his intention to make a left turn. At the time of collision, both vehicles were traveling at approximately five miles per hour.

As a result of the collision, appellant was thrown forward against the windshield, rebounded off the windshield, glanced against the driver's side door and then back into his seat. Appellant struck the left side of his forehead against the windshield and his left side and arm against the door. Immediately after the accident appellant indicated he was all right and did not complain of any physical problems.

Approximately six hours after the accident, however, appellant awoke from a nap with a severe headache and pain in his neck, across both shoulders, and in his left arm. When he moved, it felt like "things inside . . . were ripping". Dr. Albert Grayce was called and was asked to come to the appellant's home that evening.[4] Dr. Grayce agreed to do so. After examining appellant that evening, Dr. Grayce found that he had muscle spasms in the neck and shoulder region,

---

3. Theresa Cappelli also brought suit against the appellee for the injuries she sustained in this accident. Her case was settled prior to trial.

4. Dr. Grayce is an Osteopath.

restrictions of movement in both arms, the neck and lower back, and his left knee was swollen and bruised. Appellant was given a shot to relax the muscles and ease the pain.

In the days that followed the accident, appellant had "severe" headaches and the pain in his neck and shoulders became more intense. In describing the headaches, appellant testified that on one occasion the striking of a match felt "like a stick of dynamite going off" and the flame looked like a "nuclear blast". Five days after the accident, appellant began experiencing numbness and loss of strength in both of his arms. Three weeks after the accident, he started having vision difficulties.

From July 28, 1975, through August 18, 1975, appellant went to Dr. Grayce on seven different occasions for treatment of his physical problems. As part of that treatment Dr. Grayce had appellant wear a neck brace. The brace, however, was of no help. On August 18, 1975, Dr. Grayce had the appellant hospitalized for tests and observation. After running a series of tests, Dr. Grayce diagnosed appellant's condition as a concussion, cervical strain, lumbodorsal and lumbosacral sprains, and some tendonitis, mild fasciitis [5] and neuritis [6] in the neck and shoulder. The treatment prescribed was bed rest, physical therapy and the use of analgesic drugs to relax the appellant's muscles. Appellant was hospitalized for eleven days.

Appellant's physical problems and the corresponding treatment lasted for almost eight months. During a substantial portion of that time, his symptoms prevented appellant from working.

Prior to the accident, appellant did not have any of the physical problems that he exhibited following it.

At the trial, Dr. Grayce testified that the appellant's physical problems "were consistent with. . . a recoil type

5. Fasciitis is an inflammation of the sheet or band of fibrous tissue that form an investment (mold or covering) for the muscles and various organs of the body.

6. Neuritis is an inflammation of a nerve.

injury, which has to do with bumping or jostling or being moved from one position to another rather abruptly; impact injuries". (N.T. p. 64)  He also testified that some of the symptoms of concussion or recoil type injuries often do not manifest themselves until seventy-two to ninety-six hours after the injury.  (N.T. p. 58)  Although asked if he could, Dr. Grayce, appellant's only medical expert, never testified that in his professional opinion the appellant's physical problems were caused by the accident.

After closing arguments, the trial court, sua sponte, directed a verdict in favor of the appellee.[7]  The court ruled that expert medical testimony was needed to prove the causal relationship between all of appellant's injuries and the accident and that appellant had failed to present such testimony.  Therefore, the trial court determined that appellant had failed to prove that he was entitled to recover *any* damages from the appellee as a result of the accident of July 25, 1975.[8]

Appellant contends his physical problems were such that a jury could find, without the introduction of expert medical testimony, that there was a causal relationship between the

**7.** In the trial court and in his first appeal to the Superior Court, appellant raised the issue of whether a court has the power to direct a verdict sua sponte.  In the per curiam opinion filed quashing that appeal, this issue was termed an "interesting question".  In this appeal, however, appellant has not raised that issue.  It is not included in the "Statement of Questions Involved" nor was it raised during oral argument.  Therefore, that issue will not be considered. See *Commonwealth v. Miller*, 283 Pa.Super. 411, 424 A.2d 531 (1981), and Pa.R.A.P. 2116(a).

**8.** Even if *none* of appellant's damage claims could properly be submitted to the jury, it is still doubtful that a directed verdict in favor of the appellee is proper where there is evidence of liability.  In *Stevenson v. Economy Bank of Ambridge*, 413 Pa. 442, 197 A.2d 721 (1964), an action of trespass for conversion of the contents of a safe deposit box, the Court held that although the plaintiff had failed to establish that she was entitled to damages in *any* substantial sum, she was entitled to a judgment for nominal damages of $1.00 where there was evidence of a technical conversion by the Bank's denial of access to the box for a period of two (2) days and that the trial court had erred in directing a verdict for the defendant.

accident and his physical problems.[9] Hence, appellant argues, the trial court erred in directing a verdict in favor of the appellee on the basis that he failed to prove the necessary causal relationship.

In a personal injury case, the plaintiff must prove the existence of a causal relationship between the injury complained of and the alleged negligent act to be entitled to recover for the injury. *Hamil v. Bashline*, 481 Pa. 256, 392 A.2d 1280 (1978). Generally, a plaintiff must prove causation by expert medical testimony. *Smith v. German*, 434 Pa. 47, 253 A.2d 107 (1969). There is an exception, however, where there is an *obvious* causal relationship between the two. *Smith v. German*, supra. An obvious causal relationship exists where the injuries are either an "immediate and direct" or the "natural and probable" result of the alleged negligent act. *Tabuteau v. London G. & A., Ltd.*, 351 Pa. 183, 40 A.2d 396 (1945); and *Fenstermaker v. Bodamer*, 195 Pa.Super. 436, 171 A.2d 641 (1961). "The two must be 'so closely connected and so readily apparent that a layman could diagnose (except by guessing) the causal connection'. . . ." [citation omitted] *Smith v. German*, 434 Pa. at 51, 253 A.2d at 109.

In the following cases it was determined that the injuries complained of were either an "immediate and direct" or the "natural and probable" result of the alleged negligent act and, therefore, expert medical testimony was not needed to prove causation: *Schultz v. Pivar*, 370 Pa. 271, 88 A.2d 74 (1952) [sacro-iliac sprain resulting from a fall into a manhole, back pain started immediately after the fall]; *Tabuteau v. London G. & A. Co., Ltd.*, supra, [hernia caused by tripping on an uneven sidewalk, intense pain in groin and nausea felt immediately after the accident, two small lumps in the groin area discovered shortly thereafter]; *Simmons v. Mullen*, 231 Pa.Super. 199, 331 A.2d 892 (1974) [minimal

**9.** In the alternative, appellant argues that Dr. Grayce's testimony was sufficient to provide the necessary expert evidence of causation. We will not consider that argument, however, since we have determined that expert medical testimony was not needed to prove causation of all of appellant's complaints.

organic brain damage caused by being struck on the head by a car and knocked unconscious] [10]; *Fenstermaker v. Bodamer*, supra, [neck, shoulder and elbow pain developed shortly after an auto accident, doctor prescribed a neck brace and leather collar to ease the pain]; *Munns v. Easthome Furniture Industries, Inc.*, 193 Pa.Super. 61, 164 A.2d 30 (1960) [ruptured cervical disk caused when a sudden gush of compressed air twisted the plaintiff's left arm while he was using a power stapler, pain and numbness in the fingers felt shortly after the accident, pain spread to shoulder and then neck in the following days]; and *Yellow Cab Co. v. Workmen's Compensation Appeal Board*, 37 Pa.Cmwlth. 337, 390 A.2d 880 (1978) [subdural hematoma caused when plaintiff struck his head against the windshield in an auto accident, severe headaches and dizziness started almost immediately after the accident, plaintiff blacked-out one month after the accident].[11] These cases contain two common characteristics. The first is that the respective plaintiffs began exhibiting symptoms of their injuries immediately after the accident or within a relatively short time thereafter. The second is that the injury complained of was the type one would reasonably expect to result from the accident in question.

In the following cases it was determined that an obvious causal relationship did not exist between the injuries complained of and the alleged negligence and, therefore, expert medical testimony was needed to establish the necessary causal link: *Smith v. German*, supra, [allegation that a severe personality change was caused by a period of marital discord, rather than an auto accident]; *Florig v. Sears Roebuck & Co.*, 388 Pa. 419, 130 A.2d 445 (1957) [allegation that fall from a roof was caused by a wrist sprain sustained

10. The Court in *Simmons v. Mullen*, supra, assuming that expert medical testimony was necessary, also concluded that such testimony had been introduced.

11. Although the *Munns* and *Yellow Cab* cases deal with appeals from decisions of the Workmen's Compensation Appeal Board, the test for determining whether or not expert medical testimony is necessary to prove causation is the same as in other cases. See *Yellow Cab Co. v. Workmen's Compensation Appeal Board*, supra.

fifteen months prior to the fall, where the fall occurred when the plaintiff's left arm gave out while working on a roof]; *Menarde v. Phildelphia Transportation Co.*, 376 Pa. 497, 103 A.2d 681 (1954) [allegation that a slip and fall on a sidewalk two and one half months earlier had caused cancer where the only injury sustained in the fall was a bruise in the area where the cancer was found]; *Albert v. Alter*, 252 Pa.Super. 203, 381 A.2d 459 (1977) [allegation that an abnormal curvature of the spine and a defective vertebrae were the result of an auto accident where the symptoms did not develop until sometime after the accident and the problems are typically a developmental defect]; *Simons v. Workmen's Compensation Appeal Board*, 52 Pa.Cmwlth. 575, 415 A.2d 1290 (1980) [allegation that a detached retina was caused by tripping over a stool]; and, *Heffer v. G.A.F. Corporation*, 29 Pa.Cmwlth. 365, 370 A.2d 1254 (1977) [allegation that a heart attack was caused by exposure to extreme cold shortly before the attack]. In these cases it is to be noted that a significant period of time had elapsed between the injury complained of and the accident and that the injury was not of the type one would normally expect to result from the accident in question either because the accident would not normally produce such an injury or there were other equally likely or more likely causes of the injury.

The facts presented by the appellant at the trial in this case are most similar to those in *Fenstermaker v. Bodamer,* supra. In each case the injuries were sustained in an automobile accident involving vehicles moving at a relatively slow rate of speed. The injuries resulted from the respective plaintiffs being thrown about inside their vehicle by the force of the collision. The injuries sustained were to the neck, back and shoulder muscles, except that the appellant in this case also sustained a concussion. Finally, neither the appellant nor the plaintiff in *Fenstermaker* suffered from any of the physical symptoms prior to the accident in question.

Our review of the record in this case, in the light most favorable to appellant, discloses that, *at least* insofar as

appellant's headache, neck and shoulder spasms, limitation of motion in his arms, neck and lower back, and the swollen and bruised left knee are concerned, the jury could have concluded that there was an obvious causal relationship between the accident of July 26, 1975 and appellant's symptoms that manifested themselves the same day. This is especially so when the record contains evidence that a delay of six (6) hours between the trauma and the onset of symptoms is well within "normal" limits. The symptoms complained of could be found to be the "immediate and direct" result of appellee's allegedly negligent conduct. Therefore, the trial court's decision to direct a verdict in favor of appellee constituted an error of law. For that reason the trial court's decision is reversed, the judgment is vacated and the case is remanded for a new trial. Jurisdiction is relinquished.