Edwin KENNEDY, Appellant

v.

Debra SELL, Appellee.

Superior Court of Pennsylvania.

Argued Oct. 23, 2002.
Filed Feb. 3, 2003.

William J. Gagiardino, Pittsburgh, for appellant.

Heather A. Harrington, Holidaysburg, for appellee.

Before: MUSMANNO, LALLY-GREEN and KLEIN, JJ.

KLEIN, J.

¶ 1 Edwin Kennedy appeals from the judgment entered upon jury verdict on January 14, 2002 in the Court of Common Pleas of Blair County. He raises two issues on appeal. He claims the verdict in favor of Debra Sell was against the weight of the evidence and the trial court erred in refusing to give a jury instruction regarding the burden of proof a defendant must meet when challenging causation.[1] Finding no merit in either allegation, we affirm.

¶ 2 Plaintiff Edwin Kennedy had multiple problems involving his shoulder. The instant case involves an automobile accident on July 4, 1997, when he was a passenger in a car driven by Sell when she ran a red light and was hit by another car. Negligence was conceded.

¶ 3 Kennedy had prior surgery on his shoulder and had two problems with his shoulder *after* this auto accident that required two subsequent surgeries. At trial, plaintiff and his doctor essentially related all of the subsequent problems to the auto accident.

¶ 4 The jury obviously disbelieved the testimony offered on behalf of Kennedy and answered an interrogatory drafted by plaintiff (RR, 130a), that the defendant's negligence was not a substantial factor in bringing about the plaintiff's harm. (RR, 134a).

---

1. Kennedy claims in his statement of questions involved that the court erred in not granting his motion for judgment notwithstanding verdict or his motion for new trial. However, in the argument section, he treats these issues more in terms of weight of the evidence. The phrasing of these issues is not particularly important as both arguments are closely related and we have had no trouble addressing the points raised.

¶5 Kennedy makes two claims of error. First, that there was uncontroverted evidence that Kennedy at least suffered bruises from the automobile accident and that the jury verdict shocks the conscience because he was not awarded anything for those injuries. Secondly, that the Court erred when it refused to charge that the defense had the burden of proving that the injury did not come from some problem other than the auto accident.

¶6 Both arguments fail. First, the finding that no injuries were caused by the accident does not shock the conscience for two reasons. The first reason is that the jury could have found that Kennedy only suffered a bruise from the accident and it was so minor that there was no compensable pain. Although the defense presented no medical expert, it did not concede that there were compensable injuries from the accident. She challenged the expert on cross-examination and impeached the testimony of Kennedy himself. The jury could have found there were only minor bruises.

¶7 The second reason is that the way the case was tried, Kennedy waived the right to claim minor damages from bruising from the auto accident. He only asked that all of his shoulder problems be attributed to the accident. He never pointed out to the jury that he should at least be awarded damages for pain and suffering for the few weeks after the accident. Moreover, he never requested a directed verdict on causation, which would be appropriate if it were uncontroverted that he should recover for the minor injuries from the accident. After Kennedy's whole focus was that *all* his subsequent problems were caused by the instant accident, he should not be allowed to complain now that the jury did not award him something that he did not ask for. It should be no surprise that the jury did not address this minor part of his claim.

¶8 The second issue, complaining that the charge did not say the defendant had the obligation to prove that the injuries came from other sources, also fails. Since there was evidence presented in the plaintiff's case that detailed both the prior and subsequent injuries to the shoulder, the trial court was correct in refusing to charge that the defense had any burden of proof. While there has to be *some* evidence of other causation, when there is such evidence, the burden does not shift to the defense.

¶9 A detailed discussion follows.

*Facts*

¶10 The auto accident was the second of the traumatic incidents involving Kennedy's shoulder. About a year prior to the instant accident, he was hit by a car as a pedestrian, which caused injuries necessitating surgery on his shoulder to repair a rotator cuff tear. This was in July 1996, and as a result was unable to return to full duty at his work as a warehouse man until February 1997. (RR, p. 149a).

¶11 The accident that is the subject of this lawsuit took place on July 4, 1997, when Kennedy was a passenger in a car operated by Debra Sell. The car was hit when Ms. Sell ran a red light. While Kennedy did not seek medical care at the emergency room where he took Ms. Sell after the auto accident, he returned to Thomas Ellis, D.O., who had done the July 1996 surgery, four days later. Dr. Ellis, who was the only medical expert witness to testify, said that after the auto accident Kennedy had contusions of the leg, buttocks and shoulder and was unable to elevate his arm. The doctor testified he instructed Kennedy to stop working. Although no special tests were ordered or performed by Dr. Ellis at this point, it was never made clear whether this diagnosis was dependent on the complaints of Kennedy or was an objective finding. By

September 1997, Kennedy no longer had pain and Dr. Ellis told him to return to work. (RR, pp. 21a–26a).

¶ 12 Unfortunately, on February 19, 1998, Kennedy dislocated his shoulder while kick-boxing, and required a second surgery on his shoulder on April 2, 1998. He returned to work briefly. On October 25, 1998, Kennedy dislocated his shoulder again while falling down a flight of stairs, and had a third shoulder surgery on January 28, 1999. Dr. Ellis testified that following all of these problems, Kennedy had chronic shoulder problems and could never return to his job as a warehouse man. (RR, p. 187a). Dr. Ellis also testified that in his opinion, the instant auto accident was a substantial factor in causing the subsequent surgeries and all the problems Kennedy has had with his shoulder since.

¶ 13 While the defendant did not call a medical expert, she did call the Controller/Director of Human Resources of one of Kennedy's subsequent employers. That witness testified that Kennedy never mentioned his shoulder problem on his job application, never complained about it at work, and was terminated because he failed to satisfy some non-physical testing requirements. This contradicted Kennedy, who testified he left that job because it aggravated his shoulder problem.

### The Weight of the Evidence

■ ¶ 14 **(a) The jury properly could find that Kennedy only suffered minor bruising which was not compensable, despite the fact that the defense did not call a medical witness.**

¶ 15 Kennedy states that the jury's decision to disbelieve the uncontroverted evidence of his injury is shocking to one's sense of justice and requires the grant of a new trial.

¶ 16 The first problem with Kennedy's assertion is that the evidence of Kennedy's injury is not uncontroverted. While Sell presented no medical testimony of her own, the direct and cross examinations of Kennedy's treating physician, Dr. Thomas Ellis, provide sufficient foundation for the jury's decision.

■ ¶ 17 Kennedy makes this argument within the framework of both a motion for judgment notwithstanding verdict and a motion for new trial. The trial court denied both motions. In reviewing the denial of motion for JNOV, this court must view the evidence in the light most favorable to the verdict winner and give the verdict winner the benefit of every reasonable inference arising therefrom while rejecting all unfavorable testimony and inferences. *Majczyk v. Oesch,* 789 A.2d 717 (Pa.Super.2001). The review of a denial of a motion for new trial is limited to the determination of whether the trial court abused its discretion or committed an error of law. *Bezerra v. National Railroad Passenger Corporation,* 760 A.2d 56 (Pa.Super.2000). In order to properly review this issue we must review the testimony of Dr. Ellis, Kennedy's medical expert.

¶ 18 Dr. Ellis testified that although he believed there was a possibility that the auto accident in question exacerbated Kennedy's earlier problems, he ordered no additional testing. (N.T., 8/22/01, at 65). Although he recommended physical therapy for Kennedy, there are no notes for any such rehabilitative therapy actually being undertaken. (*Id.* at 64). He saw Kennedy only twice because of this accident, the initial visit and the discharge visit. (*Id.* at 26). He had intended to discharge Kennedy for his prior complaint before the auto accident, but wanted to wait for Kennedy to return to work to make sure everything was OK. This was his normal procedure for discharging a patient. (*Id.* at 24—25). His intent to discharge Kennedy after the

first injury was not documented in his notes. (*Id.* at 62). The only diagnosis provided for this accident was a bruise. (*Id.* at 63). After the auto accident, he discharged Kennedy prior to his returning to work (contradicting his earlier testimony of his normal discharge procedure). (*Id.* at 66). The osteophyte, which caused pain to Kennedy, was most likely the result of the surgery, not the accident. (*Id.* at 68). There would typically be pain from a broken osteophyte from heavy lifting, such as the work Kennedy had been performing between the auto accident and the kick-boxing injury. (*Id.* at 74). The first complaints of pain relevant to the broken osteophyte were not reported until after the kick-boxing injury. (*Id.* at 74). He never ordered a functional capacity evaluation to determine whether Kennedy's job requirements were causing pain or to see if Kennedy was capable of performing such tasks. (*Id.* at 72). There was no labral tear found during Kennedy's second surgery (post-auto accident and post-kick-boxing injury). (*Id.* at 78).

¶ 19 From the totality of Dr. Ellis' testimony, the jury was justified in concluding that Dr. Ellis had seen Kennedy only twice resulting from this accident. The jury was free to conclude that the only objective injury noted to Kennedy was a bruise. The jury was similarly free to believe that Kennedy had taken no treatment for the accident, as indicated by the lack of any physical therapy records from July to September 1997.

¶ 20 Far from being uncontroverted and overwhelming, the evidence presented at trial can equally show that although Kennedy did suffer a series of shoulder problems, the only injury fully documented from this accident was a bruise. Given that Kennedy's own testimony was in some regards suspect (he gave differing reasons for leaving employment and failed to report any problems with his shoulder in job applications), the jury was within its rights to disbelieve Kennedy's reports of pain and determine that the accident was not a substantial factor in causing Kennedy injury. The jury's determination on this matter appears rational and based upon the evidence presented and so does not shock our sense of justice.

¶ 21 Contained within this issue is a claim that it was undisputed that Kennedy suffered some injury from the accident and so is entitled to some compensation. Kennedy is correct, to a certain extent. Sell never contended that Kennedy did not receive a bruise from the accident. However, her counsel argued that this was only a minor problem and not compensable, and if compensable, only for damages for a few weeks. All other damages were contested.

██ ¶ 22 While it is true that a jury may not ignore an obvious injury, *see Kruczkowska v. Winter,* 764 A.2d 627 (Pa.Super.2000), it is equally true that a "transient rub of life" may produce an injury for which no compensable pain was associated. *Majczyk v. Oesch,* 789 A.2d 717 (Pa.Super.2001). Further, a jury is not required to believe that every injury causes pain or the type of pain alleged. *Boggavarapu v. Ponist,* 518 Pa. 162, 542 A.2d 516 (1988). We have no trouble classifying a bruise as a transient rub of life. We shudder to imagine the state of the trial courts if every bruise given and received became a compensable injury and the subject of a lawsuit. Kennedy is entitled to no relief on these issues.

**(b) Waiver.**

██ ¶ 23 We note that Kennedy never argued that he was entitled to compensation for just the bruise. His was an all or nothing argument. The entire case presented by Kennedy was that all of his subsequent surgeries, all of his time off

work, his lost earning capacity and all of his pain and suffering were linked to this accident. He never presented the jury with the option of awarding damages for the limited time between the July accident and the February kick-boxing injury.

¶ 24 Kennedy's whole focus was that *all* his subsequent problems were caused by the instant accident. In his opening statement, Kennedy's counsel said, "All you have to decide is if Rick's problems, his ongoing problems are related to that accident..." In his closing, Kennedy's counsel said, "[T]he question you have to ask yourself is what the underlying cause of all Rick Kennedy's problems over these last four years concerning his right shoulder?" Plaintiff prepared the verdict sheet, did not request a directed verdict on the issue of causation, and before the verdict did not argue to the jury that his client was at least entitled to damages for the minor injuries following the auto accident.

¶ 25 Kennedy first raised this claim after the verdict was rendered by the jury. When the trial judge asked, "Are you asking that we charge them to go back?" counsel replied, "I just wanted to put it on the record. Whatever the court thinks is an appropriate remedy." Transcript of Testimony, August 27 and August 28, 2001, p. 132.

¶ 26 Given that prior to verdict Kennedy's lawyer never asked the jury to award him damages for the immediate period after the accident, Kennedy cannot now be heard to complain that he is entitled to compensation for that period or that the jury erred in not awarding him something. The claim of damages for only the few weeks after the accident should be considered waived.

### Jury Charge

¶ 27 Kennedy next complains that the trial court improperly refused to charge the jury that the defendant had the same burden of proof as the plaintiff regarding causation. Specifically, Kennedy sought this jury instruction:

> When, as in this case, the defendants attempt to prove that some other condition or event, not the defendant's conduct caused the injury to the plaintiff, the defendant must do so with the same definite causal connection imposed upon the plaintiff.

This charge was taken from *Smith v. German*, 434 Pa. 47, 253 A.2d 107 (1969). This charge was correctly denied. The facts of *Smith* are not sufficiently similar to the facts presented here to warrant the charge. In *Smith*, the plaintiff was seeking damages related to a personality change that was the result of an auto accident. Smith presented medical testimony that the accident caused him to suffer anoxia, the cutting off or reduction of oxygen to the brain. This oxygen starvation in turn resulted in Smith suffering a temporary psychosis where he was paranoid and schizophrenic and "completely insane," eating soap and milk containers and doing "other things which only an insane person would do." *Id.* at 108.

¶ 28 The defendant, in turn, introduced evidence taken from Smith's divorce proceedings that indicated he was "upset" at his marital discord. There was no other medical testimony linking that "upset" to paranoia and schizophrenia. The Supreme Court ruled that such a link was well without the obvious and such evidence, to be properly admitted, needed to be shown through medical testimony.

¶ 29 The situation presented here is not so similar to *Smith* to require that charge. We note first that absent special circumstances (such as presented in *Smith* or where the defendant is attempting to use an affirmative defense) the defendant carries no burden of proof. *See* Pa. SSJI

5.50(Civ), 3.00(Civ) and 3.03(Civ). Put another way, a defendant may chose to present no evidence and may simply argue that the plaintiff has not met its burden of proof. A jury may find for the defendant in such a situation.

¶ 30 Here, however, the defendant did offer proof. That proof came, largely, in challenging the credibility, of Dr. Ellis and Kennedy. As noted above, defendant provided a sufficient quantum of evidence in this manner to sustain a verdict. Moreover, the evidence presented by Sell in this case was not designed to specifically prove Kennedy's injuries came from any one particular source, but rather, was designed to show that Kennedy could not demonstrate the casual connection required to show his injuries were related to the auto accident. *Smith* does not require a defendant, in a situation such as presented here, to present independent medical testimony specifically linking the alleged injuries to another cause.

¶ 31 Sell properly challenged the sufficiency of Kennedy's evidence by demonstrating a lack of causation. Sell did not try to link Kennedy's injuries to another, tenuous cause. *Smith,* to the extent it is applicable to a defendant, does not allow a defendant to simply throw any theory against the wall and see if it sticks.[2] Here, the injuries complained of by Kennedy were undoubtedly linked to other events. Dr. Ellis testified to that. There is no question that Kennedy required treatment for his shoulder from his first auto accident, when he was struck as a pedestrian. There, is no question that his second surgery was related to the kick-boxing injury, nor is there any dispute that the final

surgery was related to the dislocation suffered from his fall on a stairway. These injuries are not of the nature contemplated by *Smith.*

¶ 32 Kennedy attempted to show that in spite of the direct connection between the subsequent accidents and injuries to the surgeries and pain they were all occasioned by the injury suffered in this accident. But for the auto accident complained of, the subsequent injuries would not have happened. Sell simply pointed out through effective cross-examination and Kennedy's lack of medical documentation that it was not necessarily so.

¶ 33 Judgment affirmed.

¶ 34 MUSMANNO, J., concurs in the result.

---

2. Our research indicates that *Smith* has never been cited in subsequent cases for the proposition that in all cases where a defendant challenges the causation element of plaintiff's case, that he must produce independent evidence of his own. In fact, we can find no case citing to *Smith* that applies the case to the defendant. In large part, *Smith,* as it may apply to a defendant, appears to be an anomaly limited to the facts of that case.