J-A16003-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| DEREE J. NORMAN | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| ROI C. GREENE, AND DEBORAH HAINES | : | No. 3064 EDA 2024 |
| | : | |

Appeal from the Order Entered October 22, 2024
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s): 230602789

BEFORE:  LAZARUS, P.J., KUNSELMAN, J., and KING, J.

MEMORANDUM BY LAZARUS, P.J.:          **FILED SEPTEMBER 5, 2025**

Deree J. Norman appeals *pro se* from the order, entered in the Court of Common Pleas of Philadelphia County, dismissing his complaint against the Appellees/Defendants, Roi C. Greene and Deborah Haines.  We affirm.

Norman filed a three-count complaint alleging the following facts.  On June 30, 2021, Norman, driving a vehicle he had rented from Alamo Rent-a-Car (Alamo), stopped in traffic due to a red light.  Greene, driving a vehicle owned by Haines, stopped in the adjacent lane, traveling the same direction as Norman.  When the light turned green, Greene veered to the left, crossed lanes, and "scraped the driver's side door of [Greene's] vehicle against the passenger side front fender of [Norman]'s vehicle."  Complaint, 6/28/23, at ¶ 11.  Greene thereafter "reported that [Norman] caused the collision" to Greene's insurance company and Alamo's insurance carrier.  ***Id.*** at ¶ 12.

At count one, Norman alleged Greene negligently and/or recklessly operated his vehicle and caused numerous bodily injuries, including an injury to his left wrist, which had been "previously broken and surgically repaired." *Id.* at ¶ 15(a)(i). At count two, Norman raised the same allegations against co-defendant Haines, maintaining that she was jointly liable since she negligently "entrusted and or allowed an incompetent person to operate her vehicle." *Id.* at ¶ 20(a). Haines subsequently stipulated that she was negligent in that regard. Finally, at count three, Norman alleged that Greene defamed him when reporting the incident to the insurance carriers. He claimed that the statements caused Alamo to place him on a "do not rent list," which "ultimately prevented [Norman] from renting from Alamo and enjoy[ing] numerous discounts through his Alamo Insider affiliation." *Id.* at ¶ 24.

Defendants filed an answer on May 21, 2024, denying liability because [Norman's] vehicle accelerated" into Greene's vehicle as Greene crossed lanes. Answer, 5/21/24, at ¶ 10. On July 8, 2024, Norman filed a motion for summary judgment; Greene filed a reply after the applicable filing deadlines. The trial court denied summary judgment. Meanwhile, Norman filed two motions in limine. The first sought to preclude the defense "from testifying or introducing any evidence at trial that deems, suggests, implies[,] and[/]or states that [Norman]'s medical history and[/]or established medical facts require an expert opinion." Motion in limine #1, 9/16/24 at 1 (unpaginated). Norman argued that "expert medical testimony is not necessary to prove

causation when the connection between the event and the injury or condition is sufficiently obvious to the average person." *Id.* at ¶ 19. The second motion sought to preclude the defense "from testifying or introducing any evidence at trial that deems, suggests, implies[,] and[/]or states that [Greene]'s defamatory statements meet the criteria of an opinion." Motion in limine #2, 9/16/24, at 1 (unpaginated).

Defendants filed separate responses to the motions on September 27, 2024, and the parties selected a jury on October 18, 2024. The trial court addressed the motions in limine on the morning of trial. Norman conceded that he did not seek medical treatment after the incident except for a telephone call with an unnamed physician, who "reiterated" that, due to the prior injury in 2016, he would need surgery if his wrist suffered any further trauma. N.T. Pretrial Hearing, 10/22/24, at 5, 8. The trial court cited the defendants' response to the motions, which had asked to allow the defense to present "evidence that [Norman]'s medical history requires an expert opinion." *Id.* at 10. The court opined that Defendants did not need to present "evidence" during trial, as the issue presents a pure question of law. *Id.* Defendants then requested dismissal. *Id.* The trial court concluded that Norman had to present expert testimony to establish causation and dismissed the personal injury claims. The trial court additionally concluded that the defamation claim must be dismissed as a matter of law, on the basis that Greene's statement to the insurance companies constituted an opinion.

Norman timely filed a notice of appeal and a court-ordered Pa.R.A.P. 1925(b) concise statement. The trial court issued an opinion, and Norman raises the following issues for our consideration:

1. Did the [t]rial [c]ourt commit an error of law, an abuse of judicial discretion[,] and exercise bias by failing to enter the appropriate judgment regarding [Norman]'s [m]otion for [s]ummary [j]udgment?

2. Did the [t]rial [c]ourt [] commit an error of law, an abuse of judicial discretion[,] and exercise bias by failing to adhere to the rules of evidence?

3. Did the [t]rial [c]ourt [] commit an error of law, an abuse of judicial discretion[,] and exercise bias by dismissing the case for lack of an expert witness?

4. Did the [t]rial [c]ourt [] commit an error of law, an abuse of judicial discretion[,] and exercise bias by failing to recognize [Norman] as [an] eggshell-skull [p]laintiff?

5. Did the [t]rial [c]ourt commit an error of law, an abuse of judicial discretion[,] and exercise bias by failing to recognize negligence in accordance with law?

6. Did the [t]rial [c]ourt [] commit an error of law [and] an abuse of judicial discretion by failing to recognize a [d]efamatory [s]tatement in accordance with law?

7. Did the [t]rial [c]ourt commit an error of law, an abuse of judicial discretion[,] and exercise bias by imposing a burden of proof greater than a preponderance upon [Norman]?

Appellant's Brief, at 4.

The trial court effectively treated the defendants' request for dismissal during the pretrial hearing as a motion for summary judgment. N.T. Pretrial Hearing, 10/22/24, at 9 ("We've gone through all the trouble and effort to select a jury and have these people come and wait for us this morning. But, sir, there just is no cause of action that you can sustain here[.]"). *See Nobles*

*v. Staples, Inc.*, 150 A.3d 110, 117 (Pa. Super. 2016) ("[A] motion to dispose of a case after a jury is empaneled[,] but before evidence is adduced[,] may be treated under a variety of procedural devices, including a motion for summary judgment or for judgment on the pleadings."). We, therefore, treat the court's ruling as granting a motion for summary judgment. Our standard of review of such orders is well-settled:

> We view the record in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law will summary judgment be entered. Our scope of review of a trial court's order granting or denying summary judgment is plenary, and our standard of review is clear: the trial court's order will be reversed only where it is established that the court committed an error of law or abused its discretion.

*Daley v. A.W. Chesterton, Inc.*, 37 A.3d 1175, 1179 (Pa. 2012) (citation omitted).

Norman's first issue argues that the trial court erred by failing to grant his motion for summary judgment due to Defendants' failure to file a timely response. *See* Pa.R.C.P. 1035.3(a) ("[T]he adverse party may not rest upon the mere allegations or denials of the pleadings but must file a response within thirty days after service of the motion[.]"); *id.* at (d) ("Summary judgment may be entered against a party who does not respond."). The trial court explained in its opinion that Rule 1035.3(d) permits a trial court to grant summary judgment but does not require it, citing *Thomas v. Elash*, 781 A.2d

170 (Pa. Super. 2001), in support. *See id.* at 177 (stating that Rule 1035.3(d) "is by no means mandatory").[1]

Norman repeats the citation to *Elash* in support of his position that the trial court erred, but he offers no further legal argument. As the rule's text and *Elash* confirm that the rule is permissive, no relief is due.

Norman's second issue criticizes the timing of the order granting summary judgment, alleging that Defendants "should not have been allowed to argue on the day of trial, after a jury had been impaneled, that testimony of a medical expert was required for [Norman]'s averments to succeed. [They] should have addressed their concerns regarding expert witness testimony in a [m]otion for [s]ummary [j]udgment." Appellant's Brief, at 12.

The trial court's opinion explains that Norman chose to "raise[] the issue of whether he could proceed to trial without an expert, and as such there was nothing inappropriate about the timing of [Defendants'] argument in response." Trial Court Opinion, 2/7/25, at 4 n.1. Norman's brief does not respond to this point, and we agree with the trial court that his litigation entitled Defendants to respond in kind. While the "preferred procedure in this situation is for the parties to agree to treat the motion for dismissal as a motion for summary judgment . . . such an agreement on terminology is [not]

---

[1] The trial court also noted that it did not need to entertain Norman's motion for summary judgment at all, since Norman filed it one week after the trial court's deadline for all pre-trial motions. *See* Trial Court Opinion, 2/7/25, at 8 n.4.

mandatory." **Nobles**, 150 A.3d at 118 n.7.[2]  Therefore, Norman's second claim is without merit.

Norman's third issue contends that the trial court erred as a matter of law in concluding expert testimony was required to establish his personal injury claims.  He notes that "expert opinion testimony is not required . . . if there is an 'obvious causal relationship' between the alleged negligent act and the injury complained." Appellant's Brief, at 12.  We reproduce the trial court's ruling on this point.

> Pennsylvania courts generally require expert medical opinion testimony to prove causation in personal-injury cases, unless there is an "*obvious* causal relationship" between the alleged negligent act, and the injury complained of.  **See Lattanze v. Silverstrini**, 448 A.2d 605, 608 (Pa. Super. 1982) (citing **Smith v. German**, 253 A.2d 107, 108-09 (Pa. 1969)).  "An obvious causal relationship exists where the injuries are either an 'immediate and direct' or [] 'natural and probable' result of the alleged negligent act."  **Id.**  The two common characteristics among cases that do not require expert testimony are:  (1) the plaintiff begins "exhibiting symptoms of their injury immediately after the accident or within a relatively short time thereafter," and (2) the injury is "the type one would reasonably expect to result from the accident in question."  **Id.**
>
> In this action, [Norman] alleges that[,] prior to the accident in question, in 2016, he injured his wrist and had surgery.  [Norman] alleges that[,] after surgery[,] he regained full mobility of his hand until June 30, 2021[,] when the accident in question occurred.

---

[2] Additionally, the trial court may not consider an eleventh-hour motion for summary judgment unless "the non-moving party had notice that he must respond to the legal issue on which the motion is based and was afforded a full and fair opportunity to argue his position." **Nobles v. Staples, Inc.**, 150 A.3d 110, 118 (Pa. Super. 2016) (citation omitted).  Norman does not develop an argument along these lines.  In any event, Defendants filed their response to Norman's motions approximately one month before the hearing.

Following the accident at issue, he did not seek medical treatment and his wrist was never examined. He stated that he had one phone call with a physician. [Norman] argues that five years ago, in 2016, his doctor told him that any further trauma to the wrist could only be resolved by wrist fusion surgery. As such, [Norman] argued that no further exam was necessary once further trauma to the wrist occurred—he knew based on his discussions in 2016 that he would need surgery. [Norman] intended to rely on the records from 2016 to prove that he injured his wrist in this accident and he now required surgery.

Without any medical documentation to prove that he sustained any injury to the wrist at all, or that there was an injury that occurred because of this accident, [Norman] would be unable to prove causation.

Trial Court Opinion, 2/7/25, at 5-6 (some citations omitted; emphasis in original).

In response, Norman disagrees with the court's conclusion, insisting that "it would stand to be reasonable to conclude that since [his] wrist was broken in a car accident, a second car accident could cause further injury to the same wrist." Appellant's Brief, at 13. We are not persuaded. The principle cited by Norman is described as "an exception" to the general rule that expert testimony is needed and applies only "where the injuries are either an 'immediate and direct' or [] 'natural and probable' result of the alleged negligent act." *Lattanze*, 448 A.2d at 608 (citation omitted). In *Lattanze*, we held that injuries sustained in a car crash did not require expert testimony because the "symptoms manifested themselves the same day" and the plaintiff did not "suffer[] from any of the physical symptoms prior to the accident in question." *Id.* at 609. As the trial court noted, Norman claimed that he immediately began exhibiting symptoms, but he did not visit any

medical provider to corroborate this assertion. Furthermore, he had a preexisting injury.

This is not a case where the injury was immediately obvious and visible. *See, e.g.*, *Kucinic v. United Eng'g & Foundry Co.*, 168 A. 344, 345 (Pa. Super. 1933) (obvious causal relationship present where plaintiff "was struck in his left eye by a piece of steel, causing the loss of the left eye"). Moreover, even in cases where there is an obvious potential connection between the negligent act and the resulting injuries, we normally require expert testimony. *See Wright v. Residence Inn by Marriott, Inc.*, 207 A.3d 970, 973 (Pa. Super. 2019) (expert testimony required where plaintiff injured his shoulder after slipping on ice and falling; "The causal connection between Wright's fall and his injuries, especially the shoulder injury that was diagnosed much later and that required surgery, was not obvious."). We thus agree with the trial court that, as a matter of law, expert testimony was required in this case.

Norman's fourth issue claims that the trial court misapplied the "eggshell-skull" principle, which "dictates that a tortfeasor must take his victim as he finds him, and consequently, the tortfeasor is liable for the full extent of the injury that his conduct has caused." *Meyer v. Union R. Co.*, 865 A.2d 857, 863 (Pa. Super. 2004). The trial court explained that Norman cited the rule to support causation, but "the self-identified status as an eggshell plaintiff would not change the causation analysis[.]" Trial Court Opinion, 2/7/25, at 6. Norman does not cite any case law or develop an argument addressing that analysis. Instead, he merely repeats his argument

that expert testimony was not needed to establish causation and cites his "candor and full transparency regarding the irrefutable facts related to [his] previously sustained injuries," and then announces that his previous injuries "were unequivocally exacerbated by [Greene]'s negligent operation of a motor vehicle[.]" Appellant's Brief, at 14. Norman begs the question; as explained in the previous issue, we do not agree his prior wrist injuries were obviously aggravated by the minor collision.

Norman's fifth issue addresses the effect of Haines' admission of liability for negligent entrustment, a tort whereby "liability is imposed upon a defendant because of his or her own actions in relation to the instrumentality or activity under his or her control." *Spencer v. Johnson*, 249 A.3d 529, 563 (Pa. Super. 2021). The plaintiff must establish "that the entrustee be causally negligent before the entrustor may be held liable through negligent entrustment." *Id.* (quoting *Christiansen v. Silfies*, 667 A.2d 396, 400 (Pa. Super. 1995)).

Norman's argument both overlooks the need to establish Greene's causal negligence and misconstrues the nature of Haines' stipulation. He argues that the trial court "failed to acknowledge and/or comprehend that the stipulation of liability . . . simply reaffirms . . . Greene's negligence as previously established[.]" Appellant's Brief, at 15. However, Greene did not admit negligence, and Haines' stipulation merely affirmed that she is liable **if** Greene were found causally negligent for Norman's injuries. Due to our

- 10 -

conclusion that the trial court properly dismissed the claim of negligence against Greene, the claim for negligent entrustment necessarily fails.

Norman's sixth issue addresses the trial court's dismissal of his defamation action on the grounds that it was an opinion and not defamatory. In a defamation action, the plaintiff must establish seven conditions. **See** 42 Pa.C.S.A. §§ 8343(a)(1-7). The trial court granted summary judgment due to Norman's failure to establish the first condition, "[t]he defamatory character of the communication." That is a question of law, which the trial court decides in the first instance. **Burns v. Cooper**, 244 A.3d 1231, 1236 (Pa. Super. 2020) ("Whether the challenged statements are capable of having a defamatory meaning is a question of law for the court to determine in the first instance."). In making this assessment, "the court must view the statement in context, with close attention to the nature of the audience of the message." **Vivian v. Blank Rome, LLP**, 318 A.3d 890, 900 (Pa. Super. 2024). "A simple expression of opinion based on disclosed . . . facts is not itself sufficient for an action of defamation." **Veno v. Meredith**, 515 A.2d 571, 575 (Pa. Super. 1986) (ellipsis in original; citation omitted).

Here, the trial court concluded that the statement was an opinion. **See** Trial Court Opinion, 2/7/25, at 7 ("It is quite typical for insurance companies to take statements from the parties involved in an accident and for the parties to disagree about who caused the accident. There is nothing in such a statement that would suggest undisclosed defamatory facts as its basis."). **See Kuwait & Gulf Link Transp. Co. v. Doe**, 216 A.3d 1074, 1086 (Pa.

Super. 2019) ("A statement in the form of an opinion is actionable only if it may reasonably be understood to imply the existence of *undisclosed* defamatory facts justifying the opinion.") (emphasis in original).

Norman responds that the trial court "unjustifiably concluded that the statements made by [Greene] . . . about [Norman] causing the accident were not defamatory." Appellant's Brief, at 16. He faults the trial court for not considering several other factors in making the contextual assessment.

> The [t]rial [c]ourt failed to 1) acknowledge [Greene]'s violation of the law while operating a motor vehicle, 2) the inconsistency of [Greene]'s full statements to both insurance companies' vs[.] [Greene]'s conflicting sworn deposition testimony vs[.] documented evidence from the subject occurrence and 3) [Haines'] stipulation to negligence. On the surface, it may appear that [Greene]'s statement was a non-actionable opinion but had the statement and all its contributing factors been presented to a jury, the statement would have unequivocally been found to be a knowingly false statement that met the criteria to be deemed defamatory.

*Id.*

We agree with the learned trial court's analysis.[3] Greene's statement simply blamed Norman for the collision and merely represented his opinion of

_____

[3] Norman does not cite which comments Greene made in his deposition that conflicted with his report to the insurance companies. Nor does he explain how the stipulation to liability for negligent entrustment purposes has any connection to the defamation claim.

Finally, Norman makes much of the fact that Greene apparently admitted to violating traffic regulations by crossing a solid white line. Norman does not explain how this makes the statements defamatory. For example, a driver who is unlawfully exceeding the posted speed limit on a highway and is blindsided by a vehicle obeying all traffic rules can deny fault despite violating the law.

who was at fault. As the trial court determined, there is no indication that Greene implied additional defamatory facts by attributing fault to Norman.[4] No relief is due.

Norman's final issue does not pertain to any specific ruling or order. We reproduce his argument in full.

> The [t]rial [c]ourt [] committed an error of law, an abuse of judicial discretion[,] and bias by imposing a burden greater than a preponderance upon [Norman], which is in direct conflict with established precedent, procedure and rule of law. In addressing [Norman]'s [m]otions [i]n [l]imine, the [c]ourt should have restricted its rulings to 1) whether [the defendants] could make the argument to the jury that [Norman] needed an expert witness to prove causation, and 2) whether [the defendants] could make the argument to the jury that [Norman]'s statement was a non-actionable opinion. The [t]rial [c]ourt abused judicial discretion and exhibited bias against [Norman] by allowing [defendants] to subvert precedent and procedure which led to the dismissal of the matter with prejudice despite the [c]ourt[']s failure to examine all the evidence in this matter. The [c]ourt failed to consider all the facts of the case, while pandering to the inadequacies of [defense] [c]ounsel, thereby making a generalized and incorrect assumption that [Norman] could not meet his burden of proof, which the [t]rial [c]ourt clearly deemed greater than [a] preponderance.

Appellant's Brief, at 17.

---

[4] We add that the "audience" of the statements, the insurance company, supports the trial court's analysis. It is surely uncontroversial to conclude that an insurance company will not simply accept the word of parties who have a clear interest in shifting liability to another party. In fact, Norman attached as an exhibit to his complaint an email from a representative from the insurance carrier for Norman's rental vehicle. The employee informed Norman that "[Greene] is **claiming** that you drove forward into him" and asked Norman to "provide . . . a statement about **your version** of events of this loss." Complaint, 6/28/24 (Exhibit 2 at p.4) (emphasis added). Unsurprisingly, the company did not take Greene at his word and sought additional information before making its own decision.

This list of complaints has largely been addressed elsewhere within this memorandum. To the extent that his claim that the trial court erred by holding Norman to an incorrect burden of proof is a new allegation, we find that component of his claim waived as we cannot discern the nature of his complaint. *See Connor v. Crozer Keystone Health Sys.*, 832 A.2d 1112, 1119 (Pa. Super. 2003) (stating that an appellant "has the burden of developing" claim on appeal with legal argument; failure to do so waives claim for review).

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 9/5/2025