999 A.2d 522 (2010)
414 N.J. Super. 507
Jamie GANNON and Rebecca Gannon, individually and as husband and wife, Plaintiffs-Appellants,
v.
AMERICAN HOME PRODUCTS, INC.; American Cyanamid Company, Lederle Laboratories, and Wyeth-Lederle Vaccines, Defendants-Respondents.
DOCKET NO. A-3936-07T2.
Superior Court of New Jersey, Appellate Division.
Argued December 8, 2009.
Decided July 29, 2010.
*523 Stanley P. Kops (Law Offices of Stanley P. Kops) of the Pennsylvania bar, admitted pro hac vice, argued the cause for appellants (MacLachlan Law Offices and Mr. Kops, attorneys; Mr. Kops, on the brief).
Roger W. Yoerges (Steptoe & Johnson, LLP) of the Washington, D.C. bar, admitted pro hac vice, argued the cause for respondents (Porzio, Bromberg & Newman, and Mr. Yoerges, attorneys; Kenneth R. Meyer, Morristown, of counsel and on the brief; Mr. Yoerges, on the brief).
Before Judges GRALL, MESSANO and LeWINN.
The opinion of this court was delivered by
MESSANO, J.A.D.
Plaintiffs[1] Jamie and Rebecca Gannon appeal from the grant of summary *524 judgment dismissing their complaint against defendants American Home Products Corporation (American), American Cyanamid Company (Cyanamid), and Lederle Laboratories (Lederle) (collectively, defendants). We have considered the arguments raised in light of the record and applicable legal standards. We reverse and remand for further proceedings consistent with this opinion.

I.
Plaintiff's amended complaint, filed June 11, 2003, alleged that between September 1973 and August 1976, he was administered "five doses of Orimune trivalent vaccine," an oral polio vaccine, at the offices of his pediatrician in Pennsylvania. The complaint further alleged that American manufactured the Orimune vaccine that "caused cancer in plaintiff...." The complaint named Cyanamid, "an owned subsidiary of" American, and Lederle "a wholly-owned division" of American and/or Cyanamid, as defendants.[2]
Plaintiff contended that Orimune "was improperly manufactured and . . . contained contaminants, including . . . SV40," a simian virus. Plaintiff alleged that defendants "manufactured [the vaccine] without complying with the regulatory mandate and/or [their] report and application for the licensing of Orimune." Plaintiff sought damages, claiming that Orimune caused him to develop "an SV40 cancerous brain tumor." Defendants filed an answer generally denying plaintiff's claims.
Also in 2003, plaintiff filed a claim in the federal district court for the Eastern District of Pennsylvania, naming the United States as defendant, and seeking relief under the Federal Tort Claims Act, 28 U.S.C.A. §§ 2671-80. Plaintiff's
claim . . . rest[ed] on the argument that the United States government negligently licensed Lederle to produce Orimune and to release it to the public. Plaintiff[] claim[ed] that the United States did not confirm the absence of SV40 at each stage of manufacture allegedly in violation of the federal regulations concerning the licensing, testing, and manufacture of live oral polio vaccine.
[Gannon v. United States, 571 F.Supp.2d 615, 616 (E.D.Pa.2007), aff'd, 292 Fed.Appx. 170 (3d Cir.2008).]
In January 2007, the federal district court commenced a bench trial on plaintiff's complaint. Ibid.
In June 2007, defendants moved in this case for summary judgment, essentially arguing that plaintiff had failed to identify Orimune as the specific oral polio vaccine that was administered to him decades earlier. In July, before the motion was argued, the federal district court issued its decision. The judge concluded that "[p]laintiff[ ] ha[d] failed to demonstrate. . . that SV40 causes cancer . . . in humans." *525 Gannon, supra, 571 F.Supp.2d at 640. Because "[p]laintiff[ ] . . . failed to meet [his] burden on the dispositive issues of general and specific causation[,]" the judge entered judgment "in favor of the United States." Id. at 641. Defendants then supplemented their pending motion for summary judgment in this case by forwarding a copy of the federal district court's decision to the motion judge. Defendants argued that "[p]ursuant to the doctrine of collateral estoppel, [p]laintiff[] [was] precluded . . . from relitigating the issues of causation on which the federal court ha[d] now ruled against [him]."
On February 14, 2008, the motion judge granted defendants' motion for summary judgment on two grounds. He concluded that "plaintiff[ ] . . . failed to establish a prima facie case as to product identification" because he could not identify who manufactured the vaccine that allegedly caused his cancer. The judge additionally determined that "plaintiff[ ] [was] precluded from re[ ]litigating all issues that were previously litigated and decided by the Federal Court. . . ." Since general and specific causation were issues decided by that court, the motion judge concluded that plaintiff was collaterally estopped in the present case from litigating those issues again. He dismissed plaintiff's complaint; this appeal followed.

II.
Plaintiff first contends that the judge erred in granting summary judgment to defendants based upon the purported failure to identify their product as the vaccine that caused his cancer. He argues, in essence, that the record contained sufficient evidence such that an issue of disputed fact existed as to the identification of the vaccine administered to him, and, therefore, summary judgment should have been denied. We agree.
When reviewing a grant of "summary judgment, we [employ] the same standard[s]. . . [used] by the motion judge." Atl. Mut. Ins. Co. v. Hillside Bottling Co., 387 N.J.Super. 224, 230, 903 A.2d 513 (App.Div.) (citation omitted), certif. denied, 189 N.J. 104, 912 A.2d 1264 (2006). In conducting our review of the motion record, we accord plaintiff the benefit of all the favorable evidence and inferences. See R. 4:46-2(c); Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540, 666 A.2d 146 (1995).
It is well-settled that "in products-liability litigation, [a plaintiff] `must demonstrate that his or her injuries were proximately caused by . . . defendant's . . . product.'" Vassallo v. Am. Coding & Marking Ink Co., 345 N.J.Super. 207, 214, 784 A.2d 734 (App.Div.2001) (quoting Coffman v. Keene Corp., 133 N.J., 581, 594, 628 A.2d 710 (1993)). "[P]roof of causation-in-fact is ordinarily an indispensable ingredient of a prima facie case. . . ." Shackil v. Lederle Labs., 116 N.J. 155, 163, 561 A.2d 511 (1989); see also Namm v. Charles E. Frosst & Co., 178 N.J.Super. 19, 27, 427 A.2d 1121 (App.Div.1981) ("It is a fundamental principle of products liability law that a plaintiff must prove, as an essential element of his case, that the defendant manufacturer actually made the particular product which caused injury.") (quotation and citations omitted).
In this case, it is undisputed that defendant entities, along with Wyeth and Pfizer, were the only licensed manufacturers of the oral polio vaccine during the general time-frame at issue.[3] Plaintiff was born in *526 1973; his pediatrician was Dr. Frank Bender of Upper Darby, Pennsylvania. Dr. Bender's office manager was his daughter, Helen. By the time this litigation was filed, both had died and the office files could not be located.
Plaintiff's mother kept an "Immunization and Health Record" (the form). It indicated that plaintiff had received five doses of polio vaccine at Dr. Bender's office on specific dates between 1973 and 1976. The form was pre-printed and bore Lederle's name and corporate logo. Under a column denoting "Active Immunizations" was a line listing "Poliomyelitis Vaccine" and three possible vaccine types: "Poliovirus Vaccine, Live[;] Oral, Sabin Strains[;] Orimune® Trivalent." Five dates were handwritten in five boxes immediately to the right of this line signifying the dates that plaintiff's first through fifth doses of polio vaccine were administered. The form also indicated that plaintiff received a combined vaccination for diphtheria, tetanus, and pertusis (DPT) on the same dates.
Other lines appear on the form for "Chest X-ray," "Tuberculin Tests," and "Other," under a column denoted as "Screening and Diagnostic Tests." The following appears below the "Tuberculin Tests" line: "TINE TEST® (Rosenthal Lederle)"; "Mantoux Test"; and "Other." Handwritten next to the Tine test line was a date, "9/20/76," and the notation, "Neg."
Defendants produced a certification from David M. Standiford, who claimed to be district sales manager of the Philadelphia area between 1968 and 1979. Standiford identified the form as a "promotional" item given to doctors by his sales force, and it "w[as] not intended to be a doctor's official vaccination record." Indeed, immediately above Lederle's name and logo, the form provides that it "w[ould] be useful at school registration time," or "if you move," so that it could be "shown . . . to your new doctor." Standiford urged his sales representatives to distribute the forms "whether the particular doctor purchased Lederle products" or not.
Standiford identified Frank Blence as the Lederle sales representative who handled the Upper Darby area; Blence had since died. Standiford also recalled that "there was intense competition among manufacturers to sell vaccines, including oral polio vaccine[s]" during the 1970s. In his deposition, Standiford identified Lederle as the manufacturer of the Tine test for tuberculosis. He also testified that companies other than Lederle made a combined DPT vaccine at the time; but, he could not identify either Wyeth or Pfizer as one of those companies.
Dr. Bender's nurse, Mary Alexander, certified that she would administer the vaccine the doctor prescribed, and it would be noted on the patient's chart. Alexander claimed that the form was "not the standard medical form that [sh]e used internally in . . . [the] office[,]" and that it may have been plaintiff's own personal "vaccine booklet, . . . kept by [his] parents as proof of vaccinations for their child's school registration." In the office on the day of their visit, Helen would "record the vaccination[s] that [the patient] had received in the . . . vaccine booklet. . . ."
During deposition, Alexander identified Helen's handwriting on the form, including the dates plaintiff received his polio vaccines. Alexander "d[id] not know what brand or brands of oral polio vaccine we[re] used in . . . [Dr.] Bender's office to vaccinate patients in the 1970s[,]" and "c[ould not] identify based on [the form] what brand or brands of oral polio vaccine" plaintiff received.
In his written decision granting summary judgment, the motion judge concluded *527 that "the only evidence that plaintiff[ ] c[ould] point to" regarding product identification was the form. He then framed the question presented as follows: "The issue is whether the [form's] reference to `Orimune'. . . established that [plaintiff] received Orimune manufactured by Lederle rather than Wyeth's or Pfizer's oral polio vaccine." The judge further noted that the depositions of Alexander and Standiford "provided reasonable explanations for the lack of identification as to the vaccine administered to . . . plaintiff. . . ." He concluded that plaintiff "f[ound] no evidence to rebut . . . defendant[s'] contention" that he "failed to establish a prima facie case as to product identification. . . ."
We agree with plaintiff that in assessing the record on the issue of product identification, the judge misapplied the standard for summary judgment. Under that standard,
a determination whether there exists a "genuine issue" of material fact that precludes summary judgment requires the motion judge to consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party. The judge's function is not himself [or herself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.
[Brill, supra, 142 N.J. at 540, 666 A.2d 146 (alteration in original) (quotations omitted).]
Only "[i]f there exists a single, unavoidable resolution of the alleged disputed issue of fact," in this case, whether plaintiff was administered Orimune, is "that issue . . . insufficient to constitute a `genuine' issue of material fact for purposes of Rule 4:46-2." Ibid. (citation omitted).
We initially note that defendants never introduced any proof to support the proposition that plaintiff was administered an oral polio vaccine manufactured by either Wyeth or Pfizer. Indeed, in his written decision, the judge stated as undisputed facts that Wyeth was only licensed to sell oral polio vaccine from 1964 to 1974, and, that from 1966 to 1976, Wyeth purchased its vaccine from Pfizer, which also sold its vaccine "independently" during that time. The motion judge had earlier ordered counsel for Pfizer to search all records for evidence regarding any contact between the company and Dr. Bender.[4] Counsel advised the judge that no such records existed.
It is reasonable to infer from the form, as well as from Standiford's certification and deposition testimony, that Dr. Bender administered a Tine test, which was only manufactured by defendants, to plaintiff shortly before he received his fifth and final polio vaccination. Additionally, on the same dates that plaintiff received his polio vaccinations, Dr. Bender administered DPT vaccinations to plaintiff, and that the combined DPT vaccination was manufactured at the time by defendants, but not by either Wyeth or Pfizer. Although defendants have denied having any records of sales to Dr. Bender, a reasonable inference may be drawn that Lederle, or its representative, Blence, indeed had contact with the pediatrician's offices because the form, bearing Lederle's name and corporate logo and stamped with Dr. Bender's name, was in plaintiff's mother's *528 possession. Two specific Lederle products  the Tine test and Orimune  are the only copyrighted products that are named on the form.
The issue was not, as the motion judge characterized it, whether plaintiff "established that [he] received Orimune manufactured by Lederle rather than Wyeth's or Pfizer's oral polio vaccine." Instead, properly characterized under Brill's standard, the issue was whether defendants had marshaled sufficient proof such that there was "a single, unavoidable resolution of the alleged disputed issue of fact" in their favor, or stated another way, whether "a rational factfinder" viewing the above evidence in a "light most favorable to [plaintiff]" could conclude that he received Orimune from Dr. Bender. Brill, supra, 142 N.J. at 540, 666 A.2d 146.
We believe, based upon the evidence detailed above, that a reasonable factfinder could conclude that plaintiff received Orimune from Dr. Bender. Summary judgment on the issue of product identification, therefore, should have been denied.

III.

(a)
The motion judge additionally granted summary judgment by concluding plaintiff was collaterally estopped from relitigating the issue of causation in this case because he "had a full and fair opportunity" to litigate the issue in federal court, and the district court judge "found the testimony insufficient to preclude entry of judgment on the causation issue[]." Plaintiff contends that the motion judge improperly accorded preclusive effect to the federal district court's decision, arguing that: 1) collateral estoppel should not apply to "relitigation of an issue in a second proceeding where the burden of persuasion was heavier on that issue in the first proceeding than it would be in the second proceeding"; 2) the motion judge erroneously applied the doctrine based solely on the district court's opinion, and without regard to the record in this litigation or the fact that neither side in this case had identified their experts for trial; and 3) under all the circumstances presented, application of the doctrine was inequitable.
We begin by reviewing the federal district court's decision. In that case, after the testimony of plaintiff's causation expert, and that of three defense experts, the federal judge considered the government's "[m]otion pursuant to [F.R.C.P.] 52(c) for Judgment on Partial Findings as to causation; whether SV40 causes human medulloblastomas and whether it caused [plaintiff's] medulloblastoma." Gannon, supra, 571 F.Supp.2d at 617. Rejecting a number of procedural arguments advanced by plaintiff, the judge concluded that "[p]laintiff[ ] w[as] fully heard on the causation issues. [His] only evidence on these issues came from [his] expert, Dr. Adi Gazdar." Id. at 640.
The federal judge noted that Gazdar's opinion  "SV40 played a causal role in the development of [plaintiff]'s medulloblastoma"  was based solely "on his view of the biological evidence," because Gazdar conceded in his testimony "that `the current epidemiology evidence does not support the conclusion that SV40 causes human cancer, let alone medulloblastoma.'" Id. at 622 (quotation omitted). Citing testimony from experts on both sides of the case, the judge further found that "[e]pidemiology is the core discipline used to determine whether an infectious disease agent causes cancer in humans." Id. at 623 (citation omitted). The judge found that "[n]o virus has ever been determined to cause human cancer without both supporting epidemiological and biological evidence." Ibid.

*529 In other words, epidemiological and biological evidence are key components to all well-recognized scientific frameworks that examine causation of human diseases. If either epidemiological or biological evidence fails to support a causal connection or is otherwise inconclusive, one cannot conclude with any degree of certainty that a pathogen such as a virus is the cause of a disease such as human cancer.
[Id. at 624 (citation omitted).]
The federal judge continued by examining Gazdar's biological evidence regarding causation, noting that "[t]he only tests that. . . Gazdar conducted to determine whether SV40 was the specific cause of [plaintiff]'s medulloblastoma were . . . tests to detect the presence of SV40 DNA in [plaintiff]'s tumor tissue." Id. at 633. The judge found that "Gazdar was unable to point to any methodology by which the mere detection of SV40 DNA in a tumor is enough to prove specific causation." Ibid. After examining the specific methodology used, the judge further found that "Gazdar's conclusion that he detected SV40 DNA in [plaintiff]'s tumor . . . fails to meet the scientific standards in this field and is inherently unreliable." Id. at 635 (citation omitted).
The judge contrasted Gazdar's testimony with that of the government's experts, all of whom
relied upon the established scientific framework that relies on both epidemiological and biological evidence in determining causality. All three experts testified that the epidemiological evidence does not support the conclusion that SV40 causes human cancer.
[Id. at 641.]
The judge "f[ou]nd their testimony in this regard credible based upon sound reasoning and experience and [he] accept[ed] it." Ibid. The judge further concluded that "[p]laintiff[ ] . . . failed to meet [his] burden on the dispositive issues of general and specific causation[,]" and granted judgment "in favor of the United States." Ibid.

(b)
"[T]he binding effect of a judgment is determined by the law of the jurisdiction that rendered it." Watkins v. Resorts Int'l Hotel & Casino, 124 N.J. 398, 411, 591 A.2d 592 (1991) (citing Restatement (Second) of Conflict of Laws § 95 comment e (1971)). "`Federal law determines the effects under the rules of res judicata of a judgment of a federal court.'" Watkins, supra, 124 N.J. at 411, 591 A.2d 592 (quoting Restatement (Second) of Judgments, § 87 (1982)). We initially examine whether there are any meaningful distinctions between federal law and New Jersey law regarding the doctrine of collateral estoppel and the preclusive effect accorded a final judgment in subsequent litigation.
"Collateral estoppel . . . represents the `branch of the broader law of res judicata which bars relitigation of any issue which was actually determined in a prior action, generally between the same parties, involving a different claim or cause of action.'" Tarus v. Borough of Pine Hill, 189 N.J. 497, 520, 916 A.2d 1036 (2007) (quoting Sacharow v. Sacharow, 177 N.J. 62, 76, 826 A.2d 710 (2003)) (emphasis added). Under New Jersey law,
It is well settled that
[f]or the doctrine of collateral estoppel to apply to foreclose the relitigation of an issue, the party asserting the bar must show that: (1) the issue to be precluded is identical to the issue decided in the prior proceeding; (2) the issue was actually litigated in the prior proceeding; (3) the court in the prior proceeding issued a final judgment on the *530 merits; (4) the determination of the issue was essential to the prior judgment; and (5) the party against whom the doctrine is asserted was a party to or in privity with a party to the earlier proceeding.
[Olivieri v. Y.M.F. Carpet, Inc., 186 N.J. 511, 521, 897 A.2d 1003 (2006) (quoting In re Estate of Dawson, 136 N.J. 1, 20-21, 641 A.2d 1026 (1994)) (citations and parentheticals omitted).]
"`[E]ven where these requirements are met, the doctrine, which has its roots in equity, will not be applied when it is unfair to do so.'" Olivieri, supra, 186 N.J. at 521-22, 897 A.2d 1003 (quoting Pace v. Kuchinsky, 347 N.J.Super. 202, 215, 789 A.2d 162 (App.Div.2002)); see also In Re Coruzzi, 95 N.J. 557, 568, 472 A.2d 546 (1984) (noting collateral estoppel should not apply when "sufficient countervailing interests" exist) (citation omitted).
In addition, New Jersey has specifically adopted limitations on the doctrine contained in the Restatement (Second) of Judgments, supra, §§ 28 and 29. See Hernandez v. Region Nine Hous. Corp., 146 N.J. 645, 659, 684 A.2d 1385 (1996) ("New Jersey courts follow the doctrine of collateral estoppel or the rule of issue preclusion described in the Restatement of Judgments."); Olivieri, supra 186 N.J. at 525 n. 7, 897 A.2d 1003 (applying § 28); Pace, supra, 347 N.J.Super. at 216, 789 A.2d 162 (same); Zirger v. Gen. Accident Ins. Co., 144 N.J. 327, 338, 676 A.2d 1065 (1996) (recognizing general principles of § 29); Barker v. Brinegar, 346 N.J.Super. 558, 566-67, 788 A.2d 834 (App.Div.2002) (applying § 29 principles to deny issue preclusion); Mocci v. Carr Eng'g Assocs., P.A., 306 N.J.Super. 302, 309, 703 A.2d 686 (App.Div.1997) (same), certif. denied, 153 N.J. 404, 709 A.2d 797 (1998).
The Restatement (Second) of Judgments, supra, § 28 provides in relevant part:
Exceptions to the General Rule of Issue Preclusion
Although an issue is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, relitigation of the issue in a subsequent action between the parties is not precluded in the following circumstances:
. . . .
(4) The party against whom preclusion is sought had a significantly heavier burden of persuasion with respect to the issue in the initial action than in the subsequent action; the burden has shifted to his adversary; or the adversary has a significantly heavier burden than he had in the first action. . . .
Restatement (Second) of Judgments, supra, § 29 governs "Issue Preclusion in Subsequent Litigation with Others." (emphasis added). It provides in relevant part:
A party precluded from relitigating an issue with an opposing party, in accordance with §§ 27 and 28, is also precluded from doing so with another person unless the fact that he lacked full and fair opportunity to litigate the issue in the first action or other circumstances justify affording him an opportunity to relitigate the issue. The circumstances to which considerations should be given include those enumerated in § 28 and also whether:
. . . .
(4) The determination relied on as preclusive was itself inconsistent with another determination of the same issue;
. . . .

*531 (8) Other compelling circumstances make it appropriate that the party be permitted to relitigate the issue.
The Third Circuit has held that application of collateral estoppel to bar relitigation of an issue "`required the presence of four factors[,]'" specifically,
(1) the identical issue was previously adjudicated; (2) the issue was actually litigated; (3) the previous determination was necessary to the decision; and (4) the party being precluded from relitigating the issue was fully represented in the prior action.
[Dam Things from Den. v. Russ Berrie & Co., 290 F.3d 548, 559 n. 15 (3d Cir. 2002) (quoting Raytech Corp. v. White, 54 F.3d 187, 190 (3d Cir.1995)).]
The Third Circuit "ha[s] also considered whether the party being precluded had a full and fair opportunity to litigate the issue in question in the prior action, and whether the issue was determined by a final and valid judgment. . . ." Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc., 458 F.3d 244, 249 (3d Cir.2006), cert. denied, 549 U.S. 1305, 127 S.Ct. 1878, 167 L.Ed.2d 364 (2007) (quotation and citations omitted). In Del. River Port Auth. v. Fraternal Order of Police, 290 F.3d 567, 574 n. 10 (3d Cir.2002), the court characterized New Jersey's formulation of the doctrine and its own as "almost identical."
Like New Jersey, the Third Circuit has also recognized that "[e]ven when the requirements of the general rule of collateral estoppel are satisfied, the Court must consider whether there are special circumstances present which make it inequitable or inappropriate to foreclose relitigation of a previously determined issue." AMTRAK v. Pa. Pub. Util. Comm'n, 288 F.3d 519, 528 (3d Cir.2002); see also Duvall v. AG of the United States, 436 F.3d 382, 390 (3d Cir.2006) ("[C]ollateral estoppel was borne of equity and is therefore `flexible,' bending to satisfy its underlying purpose in light of the nature of the proceedings.").
And, also like New Jersey, the Third Circuit and its district courts have incorporated the limitations contained in §§ 28 and 29 of the Restatement (Second) of Judgments, supra, into their jurisprudence. See Duvall, supra, 436 F.3d at 391 ("The flexibility of the doctrine is recognized in the several `exceptions' enumerated" in § 28.); see also AMTRAK, supra, 288 F.3d at 525 (recognizing § 28 as "summariz[ing]" "[t]he relevant equitable factors to be considered"); Wells v. Rockefeller, 728 F.2d 209, 214-15 (3d Cir.1984) (recognizing principles set forth in § 29), cert. denied, 471 U.S. 1107, 105 S.Ct. 2343, 85 L.Ed.2d 858 (1985); McLendon v. Cont'l Group, Inc., 660 F.Supp. 1553, 1564 (D.N.J.1994) (finding offensive collateral estoppel appropriate after consideration of § 29); Republic of Phil. v. Westinghouse Elec. Corp., 782 F.Supp. 972, 980-81 (D.N.J.1992) (refusing to apply collateral estoppel because of disparate burdens of proof as recognized by § 28(4)).
Furthermore, under federal law, and under the law of this State, whether an issue is precluded based upon prior litigation is a question of law, and thus subject to our de novo review. See Szehinskyj v. AG of the United States, 432 F.3d 253, 255 (3d Cir.2005) ("Application of collateral estoppel is a question of law. . . .") (citation omitted); Selective Ins. Co. v. McAllister, 327 N.J.Super. 168, 173, 742 A.2d 1007 (App.Div.), certif. denied, 164 N.J. 188, 752 A.2d 1290 (2000).
We are convinced that the congruence of the federal principles regarding issue preclusion, and those of our state jurisprudence, eliminate any choice of law distinction. We are free to consider the issues raised under the particular facts of this case in accordance with New Jersey law *532 "as well as analogous federal decisions.. . ."[5]Del Piano v. Merrill Lynch, 372 N.J.Super. 503, 509, 859 A.2d 742 (App.Div.2004) (citation omitted), certif. granted, 183 N.J. 218, 871 A.2d 95, certif. dismissed as improvidently granted, 195 N.J. 512, 950 A.2d 901 (2005).

(c)
In Rivard, supra, a case involving the Orimune vaccine and similar claims against these defendants, we granted these same defendants' motion for leave to appeal from the denial of summary judgment. 391 N.J.Super. at 138-39, 917 A.2d 286. Before us, "they assert[ed] entitlement to summary judgment because no reasonable jury could conclude either that [the plaintiff]'s vaccine contained SV40 or that SV40 causes human cancer." Id. at 149, 917 A.2d 286. Noting the favorable inferences to which plaintiff was entitled at that stage of the litigation, id. at 150, 917 A.2d 286 (citing Brill, supra, 142 N.J. at 540, 666 A.2d 146), we affirmed the trial court's denial of summary judgment, holding,
Regarding the link between SV40 and [the plaintiff]'s tumor, . . . one of [the] plaintiff[']s experts reports finding SV40 in [the plaintiff]'s tumor, which is sufficient to establish a jury question, even if the epidemiological evidence on the causation question generally is equivocal.
[Rivard, supra, 391 N.J.Super. at 151, 917 A.2d 286.]
See also Glastetter v. Novartis Pharms. Corp., 252 F.3d 986, 992 (8th Cir.2001) ("[A] plaintiff need not introduce epidemiological evidence of causation in order to satisfy [the] . . . threshold for admission of expert medical testimony."); Siharath v. Sandoz Pharms. Corp., 131 F.Supp.2d 1347, 1358 (N.D.Ga.2001) ("The lack of epidemiological studies supporting [the] [p]laintiffs' claims creates a high bar . . . to surmount . . . but it is not automatically fatal to [the] [p]laintiff[']s case.").
Plaintiff argues that the federal district court's decision relied upon Gazdar's failure to cite any epidemiological evidence of causation, thus imposing a higher burden of proof than we required in Rivard. Pursuant to the Restatement (Second) of Judgments, supra, § 28(4), a prior judgment should not be given preclusive effect in a subsequent action if "[t]he party against whom preclusion is sought had a significantly heavier burden of persuasion with respect to the issue in the initial action than in the subsequent action . . . or the adversary has a significantly heavier burden than he had in the first action. . . ."
However, as defendants note, the district court judge, while stressing the lack of any epidemiological evidence of causation, went much further. He carefully assessed Gazdar's methodology, including the process by which he determined SV40 DNA was actually present in plaintiff's tumor. He concluded that the methodology was flawed, and possibly resulted in tainted samples. In the end, the district court judge found Gazdar's biological evidence to be "inherently unreliable." A careful review of the opinion does not lead to a conclusion that the district court judge imposed a heavier burden of proof upon plaintiff. We therefore must reject plaintiff's argument in this regard.
Nevertheless, we are compelled to reverse the grant of summary judgment to defendants and remand the matter for further proceedings. We do so because the motion record as presented to the judge, and in turn, the appellate record as presented *533 to us, do not permit consideration of whether "[o]ther compelling circumstances make it appropriate that [plaintiff] be permitted to relitigate the issue." Restatement (Second) of Judgments, supra, § 29(8).
The commentary to § 29 provides:
j. Other circumstances. The circumstances specified in this Section are illustrative rather than definitive of those that may be considered in determining application of issue preclusion. Important among such other circumstances is the disclosure that the prior determination was plainly wrong or that new evidence has become available that could likely lead to a different result. It is unnecessary that the party seeking to avoid preclusion show, as he must in seeking to set aside a judgment, that the evidence could not have been discovered with due diligence; the question is not whether a prior determination should be set aside but whether it should be treated as conclusive for further purposes. Illustration:
9. C engages in conduct resulting in damage to the property of A and B that is stored in the same location. In A's action against C for damages, a key witness for C on the issue of C's negligence is unavailable. Judgment is for A. In B's subsequent action for his damage, C may be permitted to relitigate the issue of negligence upon a showing that the witness can be available at trial of the action.
As noted above, defendants supplemented their original summary judgment motion, based on product identification, by simply forwarding the federal district court's decision to the judge. Plaintiff properly points out that defendants' motion was made without citation to the record that actually exists in this litigation. He notes by example, therefore, that the motion judge did not evaluate plaintiff's expert reports. Indeed, plaintiff asserts, and defendants have not denied, that experts have not yet been identified by the parties. Certainly the record before us does not allow our independent review of the proof plaintiff intends to marshal in this litigation to prove the essential issue of causation; perhaps it will be the same evidence he used in the federal district court case. Or, plaintiff may have conducted new tests that do not pose the issue of tainted results or he may have developed additional evidence of causation. The point is, the motion judge never considered the issue and we are not in any position to evaluate the adequacy of plaintiff's proof because the appellate record is bare in this regard.
The lack of a motion record in this case also does not permit us to consider another reason why collateral estoppel may or may not equitably apply in this case. The Restatement (Second) of Judgments, supra, § 29(4) provides that collateral estoppel should not apply between different parties when "[t]he determination relied on as preclusive was itself inconsistent with another determination of the same issue. . . ." Neither party discussed this exception in their briefs.
The commentary to § 29(4) provides:
f. Inconsistent prior determination. Giving a prior determination of an issue conclusive effect in subsequent litigation is justified not merely as avoiding further costs of litigation but also by underlying confidence that the result reached is substantially correct. Where a determination relied on as preclusive is itself inconsistent with some other adjudication of the same issue, that confidence is generally unwarranted. The inference, rather, is that the outcomes may have been based on equally reasonable resolutions *534 of doubt as to the probative strength of the evidence or the appropriate application of a legal rule to the evidence. That such a doubtful determination has been given effect in the action in which it was reached does not require that it be given effect against the party in litigation against another adversary.
[Emphasis added.] The commentators of the Restatement (Second) of Judgments, cited the case of State Farm Fire & Cas. Co. v. Century Home Components, Inc., 275 Or. 97, 550 P.2d 1185 (1976), as illustrative of this principle.
In that case, inconsistent jury verdicts had been reached on various claims brought by a number of plaintiffs alleging that fire damage to their property was caused by the defendant's negligence. Id. at 1187. The plaintiff in the current litigation, not a party in any prior litigation against the defendant, sought to utilize prior adjudications of negligence as preclusive proof against the defendant in its case. Id. at 1187-88. Concluding that estoppel should not apply, the court stated:
Those courts and commentators which have considered the question are in virtually unanimous agreement that where outstanding determinations are actually inconsistent on the matter sought to be precluded, it would be patently unfair to estop a party by the judgment it lost.
. . . .
[W]here there are extant determinations that are inconsistent on the matter in issue, it is a strong indication that the application of collateral estoppel would work an injustice. There seems to be something fundamentally offensive about depriving a party of the opportunity to litigate the issue again when he has shown beyond a doubt that on another day he prevailed.
[Id. at 1191. (footnotes omitted).]
It is true that the issue presented in Century Home Components involved the use of a prior judgment for "offensive" purposes, i.e., where the earlier judgment is "used to bar a defendant from asserting a defense previously litigated and lost against a different plaintiff. . . ." Kortenhaus v. Eli Lilly & Co., 228 N.J.Super. 162, 164, 549 A.2d 437 (App.Div.1988) (citation omitted). The use of offensive collateral estoppel by a plaintiff has been recognized as particularly inequitable when inconsistent prior determinations exist. See Parklane Hosiery Co. v. Shore, 439 U.S. 322, 330, 99 S.Ct. 645, 651, 58 L.Ed.2d 552, 562 (1979) ("Allowing offensive collateral estoppel may also be unfair to a defendant if the judgment relied upon as a basis for the estoppel is itself inconsistent with one or more previous judgments in favor of the defendant."); accord Robi v. Five Platters, Inc., 838 F.2d 318, 329-30 (9th Cir.1988) (offensive collateral estoppel improvidently utilized in light of inconsistent judgment previously rendered in favor of defendants).
Indeed, our court recognized in Kortenhaus, supra, that offensive collateral estoppel is inappropriate in the face of inconsistent prior determinations. 228 N.J.Super. at 169, 549 A.2d 437. There, the plaintiff sued the defendant drug manufacturer alleging that its product, DES, used by her mother during pregnancy, caused the development of her cancer. Id. at 163, 549 A.2d 437. The trial judge granted the plaintiff summary judgment based upon the result of an earlier trial involving a different plaintiff that had ended in a judgment against the defendant. Id. at 163-64, 167-68, 549 A.2d 437.
We recognized, however, the defendant's "success in much of its DES litigation experience . . .," and the principles expressed in comment f, Restatement *535 (Second) of Judgments, supra, § 29. Kortenhaus, supra, 228 N.J.Super. at 169, 549 A.2d 437. In reversing the trial court's grant of partial summary judgment to plaintiff, we concluded that "[k]nowledge at the time issue preclusion is considered that inconsistent results have been obtained with respect to the resolution of those issues casts doubt as to the reliability of a particular result adverse to a defendant and makes its preclusive application unfair." Ibid.
This case, of course, deals with defendants' assertion of defensive collateral estoppel, i.e., it is being "used by . . . defendant[s] to bar a claim plaintiff has previously litigated and lost against a different defendant. . . ." Id. at 164, 549 A.2d 437. But, in setting forth their limitations on the use of collateral estoppel in general, the Restatement (Second) of Judgments, supra, §§ 28 and 29 make no distinction between offensive or defensive collateral estoppel. See Restatement (Second) of Judgments, supra, § 29, Reporter's Notes: § 88, Tent. Draft No. 3) ("[T]he distinct trend if not the clear weight of recent authority is to the effect that there is no intrinsic difference between `offensive' and `defensive' issue preclusion. . . ."). And, in particular, the Restatement (Second) of Judgments makes no distinction in recognizing that issue preclusion is inappropriate when there are inconsistencies between prior determinations of the issue sought to be precluded.
The motion judge in this case was also the motion judge whose decision we affirmed in Rivard; his decision in that case is part of the appellate record. It is clear that his decision, and our affirmance, reached the conclusion that the plaintiff had presented sufficient evidence to withstand summary judgment. Rivard, supra, 391 N.J.Super. at 150, 917 A.2d 286. To that extent, that determination is inconsistent with the determination made by the federal district court on the issue of causation. We note that our decision in Rivard was not a final judgment; but the Restatement (Second) of Judgments does not require that it be. Supra, § 29(4) ("The determination relied on as preclusive was itself inconsistent with another determination of the same issue. . . .") (emphasis added). The inconsistency denying preclusive effect need not be between final judgments but may exist between "judicial determinations." Jack Faucett Assocs. v. AT & T, 744 F.2d 118, 130 (D.C.Cir.1984). "The rationale for the inconsistency rule is equally pertinent wherever the inconsistency occurs." Ibid.
We believe, therefore, that before plaintiff's case is dismissed with prejudice based solely upon the judgment of the federal district court, the motion judge, with an eye toward the record in this case, must consider whether the determination reached by the district court was inconsistent with the determination reached in Rivard, such that it "casts doubt as to the reliability of" the district court's judgment. Kortenhaus, supra, 228 N.J.Super. at 169, 549 A.2d 437.
Reversed and remanded for further proceedings. We do not retain jurisdiction.
NOTES
[1] Our use of the singular, "plaintiff," refers to Jamie Gannon. The claim of his wife Rebecca is wholly derivative.
[2] Also named as defendants in the amended complaint were "Wyeth, Wyeth Laboratories, Wyeth Pharmaceutical, Wyeth-Lederle Vaccines," and a number of "John Doe" defendants. No specific allegations were made against any of these parties.

In their brief, defendants detail the relationship between the named defendants as follows: "When [plaintiff] received his immunizations, Lederle Laboratories was an unincorporated division of American. . . . American. . . acquired . . . Cyanamid . . . in 1994 and changed the latter's name to Wyeth Holdings Company, which was then a wholly-owned subsidiary of American. . . . American. . . subsequently changed its name to Wyeth, of which Wyeth Holdings Corporation is a wholly-owned subsidiary. Wyeth Laboratories Inc. (now known as Wyeth Pharmaceuticals Inc.), which was never named as a party to this litigation, was a polio vaccine manufacturer completely distinct from Lederle Laboratories and . . . Cyanamid. . . . Wyeth Laboratories Inc. distributed an [oral polio vaccine] in the 1960s and 1970s."
[3] In our earlier decision, Rivard v. Am. Home Prods., Inc., 391 N.J.Super. 129, 140-42, 917 A.2d 286 (App.Div.2007), we detailed the development of the oral polio vaccine in general and Orimune in particular.
[4] Discovery in a number of related vaccine cases was being case-managed by the motion judge. Pfizer was a named defendant in one of those cases argued back-to-back with this case, Moreno v. Am. Home Prods., Inc., No. A-3935-07 (App.Div. July 12, 2010).
[5] In their brief, defendants assert we "must look to federal law to determine th[e] judgment's preclusive effect[,]" but nevertheless argue that the same result would be reached through application of New Jersey's principles.