J-A22028-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| HALEY HOLSWORTH | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| KRUTI BHANUBHAI PATEL | : | No. 162 EDA 2025 |

Appeal from the Judgment Entered December 26, 2024
In the Court of Common Pleas of Montgomery County Civil Division at
No(s): 2021-00687

BEFORE: LAZARUS, P.J., LANE, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY LANE, J.:                    **FILED OCTOBER 15, 2025**

Haley Holsworth ("Holsworth") appeals from the judgment entered pursuant to a jury verdict in her favor and against Kruti Bhanubhai Patel ("Patel") in the amount of $13,000, solely for future medical expenses. After review, we reverse and remand for a new trial limited to past and future non-economic damages.

On June 12, 2019, in Willow Grove, Montgomery County, Patel rear-ended a vehicle operated by Holsworth. At the time of the accident, Holsworth, then nineteen years old, was stopped at a red light behind another vehicle when Patel "plowed into the rear of her vehicle . . . which caused her to suffer injuries." Trial Court Opinion, 1/28/25, at 2; **see also** N.T., 9/30/24, at 28, 50.

_____

[*] Former Justice specially assigned to the Superior Court.

The case proceeded to a jury trial on September 30, 2024. Over the course of the three-day proceeding, the parties presented testimony from Holsworth, Patel, treating providers, and medical experts. Holsworth testified that following the accident she immediately experienced confusion, memory loss, headaches, and neck and back pain. Three days later, she sought care at the emergency room after repeatedly vomiting and experiencing headaches, photosensitivity, and pain in her neck and lower back. The hospital discharged Holsworth with diagnoses of concussion, cervical strain, and lumbar strain, and prescribed her pain medication and a muscle relaxer.

Holsworth thereafter sought ongoing care with her primary care physician several times and, beginning on July 29, 2019, treated with chiropractor James Brady, D.C. ("Dr. Brady") for approximately six months, during which she had more than sixty visits. Holsworth also underwent physical therapy, received steroid injections, and TENS[1] treatment. Objective imaging confirmed cervical disc herniations at C5-C6 and C6-C7 and a lumbar herniation at L5-S1, all with radiculopathy consistent with her symptoms.

Nearly two and one-half years after the accident, Holsworth consulted neurosurgeon Nirav Shah, M.D., ("Dr. Shah"). Dr. Shah diagnosed Holsworth with a concussion, which he concluded is a traumatic brain injury placing her

---

[1] Transcutaneous electrical nerve stimulation ("TENS") therapy involves the use of low-voltage electric currents to treat pain. https://my.clevelandclinic.org/health/treatments/15840-transcutaneous-electrical-nerve-stimulation-tens (last visited 9/2/25).

at increased risk for future concussions, and noted that she continued to experience symptoms at the time of his evaluation. Dr. Shah also diagnosed Holsworth with cervical and lumbar disc herniations with radiculopathy, and recommended additional treatment, including possible surgery. Nearly a year later, Holsworth resumed chiropractic treatment with Sean Mandel, D.C. ("Dr. Mandel"), attending thirteen visits. *See* Trial Court Opinion, 1/28/25, at 7.

Holsworth testified that she continues to suffer pain since the accident and it inhibits her daily activities such as driving, exercising, lifting objects, sleeping, and attending school. Holsworth explained:

> [T]he normal day-to-day tasks that most people can do, I struggle with; simply like driving has been one of the biggest things. . . . I can't do sports. I can't really work out like I used to. I can't pick up anything over [twenty] pounds, . . . especially if I'm having flare ups."

*Id*. at 2. Holsworth further testified that she continues to experience symptoms related to her traumatic brain injury, including migraines, light sensitivity, and anxiety for which she "[sought] help with[.]" N.T., 9/30/24, at 64-66; *see also* N.T., 10/1/24, at 10.

On cross-examination, Patel elicited testimony regarding Holsworth's prior childhood medical history, which reflected multiple diagnostic studies and earlier injuries. The records showed that Holsworth underwent: (1) a brain MRI in 2011, at age eleven; (2) brain CAT scans in 2012 and 2013, at ages thirteen and fourteen; (3) a cervical MRI in 2013, which revealed arthritis, at age fourteen; (4) a lumbar x-ray in 2015, for a pulled muscle, at age sixteen;

(5) another lumbar x-ray in 2016, at age seventeen; and (6) a cervical x-ray in 2017, at age eighteen.

When questioned about these studies, Holsworth explained that she was a backseat passenger in a 2012 motor vehicle accident in which she hit her head and complained of neck pain, and that she sustained a mild concussion after falling from her bicycle in 2013. Holsworth also underwent a scoliosis study in 2016. Holsworth testified, however, that she was a three-sport athlete in high school, had no athletic limitations, and received only brief treatment after the earlier accidents, with no residual issues by the time of the June 2019 collision.

Patel disputed the severity of the collision, testifying her vehicle merely "bumped into Holsworth's [vehicle's] rear end" at about ten miles per hour and that "it was not a significant accident." Trial Court Opinion, 1/28/25, at 3; **see also** N.T., 10/1/24, at 86.

Both parties presented medical expert testimony. Holsworth called two medical experts to testify, Dr. Shah, and Kimberly Kushner ("Kushner"), a certified nurse life care planner. Dr. Shah provided video testimony, which Holsworth played for the jury at trial. Dr. Shah testified to a reasonable degree of medical certainty that Holsworth sustained a traumatic brain injury, neck herniations with radiculopathy, and a lower back herniation with radiculopathy as a result of the June 2019 accident. Dr. Shah explained that, despite undergoing chiropractic and other conservative treatment he deemed

reasonable and necessary, Holsworth had not fully recovered and suffers from permanent injuries. Dr. Shah defined a permanent injury as one in which the affected body part will never regain its original size, shape, structure, or function. Dr. Shah further opined that Holsworth will require future medical treatment, including possible surgical procedures, to address her ongoing pain and limitations. *See* Trial Court Opinion, 1/28/25, at 4.

Dr. Shah addressed questions concerning Holsworth's prior medical history. Dr. Shah explained that, based on Holsworth's records, there were no documented problems with her neck or back before the June 2019 accident. By contrast, after the accident Holsworth presented with neck and back pain, objective findings of radiculopathy on EMG, and higher signal disc herniations at C5-C6, C6-C7, and L5-S1.

Kushner testified as Holsworth's expert in life care planning. In preparing her plan for Holsworth, Kushner reviewed Dr. Shah's report and treatment recommendations addressing Holsworth's traumatic brain injury, as well as her cervical and lumbar injuries. Kushner explained:

> [B]ased on the opinions of Dr. Shah, I evaluated the future costs for diagnostic studies, specifically an MRI of the brain; cognitive therapy and neuropsychological testing; other therapies, including visual and vestibular therapy; a neurologist visit, as well as a physician visit, to address the cervical and lumbar injury; some diagnostic studies of the cervical and lumbar injury; the cost for injections and therapy; and finally, the cost for surgical procedures and postoperative therapy.

N.T., 10/1/24, at 62-63. Kushner also reviewed the report of David Reinhardt, M.D. ("Dr. Reinhardt"), an orthopedic surgeon retained by the defense who

also examined Holsworth. In her expert opinion as a medical cost specialist, Kushner estimated that Holsworth's future medical expenses[2] related to her traumatic brain, neck, and back injuries would total $393,029. *See id*. at 71-72.

Patel presented the video testimony of Dr. Reinhardt, who acknowledged that he does not treat traumatic brain injuries and therefore offered no conclusions or opinions concerning Holsworth's traumatic brain injury and related symptoms. Dr. Reinhardt did not dispute that Holsworth sustained neck and back strains related to the accident and testified that five months of treatment were reasonable and necessary. Dr. Reinhardt disagreed, however, that Holsworth's neck and back injuries were permanent or that her ongoing symptoms from those injuries were attributable to the accident. Instead, Dr. Reinhardt attributed Holsworth's ongoing neck and back complaints to a "pre-existing degenerative process, coupled with her

_____

[2] During trial, Holsworth sought to introduce testimony from Kushner regarding the reasonableness of Holsworth's outstanding past medical bills. Patel objected, arguing that Holsworth had not disclosed any expert report addressing the bills and was improperly attempting to elicit expert opinion testimony for the first time at trial. The trial court noted that, while the parties had stipulated to the authenticity of the medical records, Patel had consistently objected to the admissibility of the past and outstanding medical bills. Concluding that Kushner did not provide opinions on the reasonableness of the bills in her report, the trial court sustained Patel's objection and precluded Kushner from offering such testimony. *See* N.T., 9/30/24, at 41-50.

longstanding weight issues not related to the accident." Trial Court Opinion, 1/28/25, at 10.

Patel conceded liability, limiting the jury's task to causation and damages. *See* N.T., 10/2/24, at 3, 41, 47. On October 2, 2024, the jury found that Patel's negligence was a factual cause in bringing about harm to Holsworth. *See* Jury Verdict Sheet, 10/2/24. The jury returned a verdict in Holsworth's favor and awarded her $13,000 in **future medical expenses**. *See id*. at 2 (emphasis added).[3] The jury did not award Holsworth any amount for "[p]ast and future non-economic . . . pain and suffering[,] embarrassment and humiliation[,] and loss of life's pleasures," although Holsworth presented evidence on these claims. *Id*.

Holsworth filed a timely post-trial motion arguing that the verdict was against the weight of the evidence, and seeking a new trial limited to non-economic damages. Patel filed a timely response thereto. In addition, Holsworth filed a motion for delay damages. The trial court held a hearing on both motions. By order dated December 4, 2024, the trial court denied Holsworth's post-trial motion for a new trial on the issue of non-economic damages. In a separate order, the trial court granted Holsworth's motion for

_____

[3] We note that although Kushner testified that Holsworth would require future medical treatment both to alleviate pain and for diagnostic purposes, the jury did not specify the type of future medical expenses that were the basis for its award. Thus, on the record before us, it is unknown whether the damage award was for future medical expenses to alleviate pain or for diagnostic purposes, or for both.

delay damages in the amount of $2,535.33. On December 26, 2024, Holsworth filed a praecipe for entry of judgment on the molded verdict of $15,535.33. Thereafter, Holsworth filed a timely notice of appeal, and both Holsworth and the trial court complied with Pa.R.A.P. 1925.

Holsworth presents the following issue for our review:

> Did the trial court err and abuse its discretion by not granting a new trial on the issue of non-economic damages where the jury's award of zero dollars . . . for past and future non-economic damages was against the weight of the evidence and shocks one's sense of justice in light of the jury's award of thirteen thousand dollars . . . for [Holsworth's] future medical expenses.

Holsworth's Brief at 6.

In her sole issue on appeal, Holsworth challenges the trial court's denial of her post-trial motion on the issue of whether the jury's award of zero non-economic damages was against the weight of the evidence. The trial court concluded that, to the extent Holsworth's issue can be characterized as a claim that the jury reached an inconsistent verdict, she "waived" any such claim by failing to object to an inconsistent verdict before dismissal of the jury. Trial Court Opinion, 1/28/25, at 10. We reject this characterization and decline to find waiver.

As this Court explained in *Avery v. Cercone*, 225 A.3d 873, 877-78 (Pa. Super. 2019), an inconsistent verdict differs from a verdict against the weight of the evidence. An inconsistent verdict is one that "does not clearly report the jury's factual findings on its face," and the inconsistency must be

apparent "within the four corners of the verdict slip." *Id*. In such cases, a party must object before dismissal of the jury, allowing the trial court to return the jury to its deliberations for clarification rather than reconsideration. *See id*. By contrast, the law allows a jury to return a verdict that is not inconsistent, but which the trial court nevertheless views as factually wrong. *See id*. at 879. In light of the wide latitude afforded to juries on the question of pain and suffering, a jury is always free to award $0 for pain and suffering, and such a verdict is not internally inconsistent. *See id*. The question then becomes whether such a verdict is against the weight of the evidence such that it shocks the conscience of the trial court. *See id*. Thus, when a verdict is against the weight of the evidence, a party may raise the claim in a timely post-trial motion. *See id*. at 877.

Here, Holsworth does not contend that the jury's answers on the verdict slip are facially irreconcilable. Instead, she argues that the award of future medical expenses without any non-economic damages is unsupported by the evidence and shocks one's sense of justice. That argument properly sounds in weight of the evidence, not inconsistency of the verdict. *See id*. at 879 (concluding that where the jury only compensated the plaintiff for her medical expenses and awarded nothing for her pain and suffering, as it was entitled to do, the plaintiff properly challenged the jury's verdict as against the weight of the evidence rather than as an inconsistent verdict); *see also Burnhauser v. Bumberger*, 745 A.2d 1256, 1261 (Pa. Super. 2000) (holding that where

the jury only compensated the plaintiff for her medical expenses and awarded nothing for her pain and suffering, the verdict was not inconsistent, and the plaintiff properly raised a post-trial weight-of-the-evidence challenge to the jury's award of zero non-economic damages).   Accordingly, we conclude Holsworth properly preserved the issue as a weight-of-the-evidence claim in her timely post-trial motion, and it is subject to our review.

Having clarified that Holsworth's claim presents a preserved challenge to the weight of the evidence, we turn to the merits.  Our review is guided by the settled principles that govern a weight of the evidence claim.  As our Supreme Court has explained:

> A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court.  A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion.  Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.  It has often been stated that a new trial should be awarded when the [factfinder's] verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail.

*In re M.B.*, 228 A.3d 555, 566 (Pa. Super. 2020)

An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court:

> Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the

verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

*Id*.

In assessing a weight challenge, we recognize that the factfinder is free to accept or reject the credibility of both expert and lay witnesses, and to believe all, part or none of the evidence. *See Casselli v. Powlen*, 937 A.2d 1137, 1139 (Pa. Super. 2007). We additionally recognize that:

[a] jury is not required to award a plaintiff any amount of money if it believes that the injury plaintiff has suffered in an accident is insignificant. "Insignificant" means the jury could have concluded that any injury plaintiff suffered did not result in compensable pain and suffering. While a jury may conclude that a plaintiff has suffered some painful inconvenience for a few days or weeks after the accident, it may also conclude that the discomfort was the sort of "transient rub of life for which compensation is not warranted."

*Lombardo v. DeLeon*, 828 A.2d 372, 375 (Pa. Super. 2003) (citations omitted); *see also Kennedy v. Sell*, 816 A.2d 1153, 1157 (Pa. Super. 2003) (explaining that a commonplace injury such as a bruise may be categorized by the finder of fact as a "transient rub of life"); *Giko v. Calgano*, 296. A. 3d 649 (Pa. Super. 2023) (unpublished memorandum at *4) (citation omitted) (stating that "back, neck, and shoulder pain, lasting at a minimum seven months and requiring multiple injections and physical therapy treatments, are

not the type of 'rub of life' injuries for which the jury is free to award no damages")[4].

However, when the evidence reflects uncontroverted injuries that human experience teaches necessarily involve pain, a jury is *not* free to ignore an obvious injury. *See Casselli*, 937 A.2d at 1139. As this Court has explained:

> As a general proposition victims indeed must be compensated for all that they lose and all that they suffer from the tort of another. In that proposition is subsumed that they have suffered loss and that compensable pain was inflicted.
>
> We have held and hold now that there are injuries to which human experience teaches there is accompanying pain. Those injuries are obvious in the most ordinary sense: the broken bone, the stretched muscle, twist of the skeletal system, injury to a nerve, organ or their function, and all the consequences of any injury traceable by medical science and common experience as sources of pain and suffering. Pain of varying degree, may indeed follow small injury and be greater in its consequence than the initial blow. It may aggravate existing defects of the person, exploding latent diseases or precipitate, into present pain, what otherwise might have passed or been long delayed, absent the immediate injury. . . .
>
> ***Where a defendant concedes liability and his or her expert concedes injury resulting from the accident that would reasonably be expected to cause compensable pain and suffering***, ***the jury's verdict is against the weight of the evidence where it*** [***awards zero damages for pain and suffering***.] Such is totally contrary to human experience and is in total conflict with the laws of this Commonwealth.

_____

[4] *See* Pa.R.A.P. 126(b)(1)-(2) (providing that an unpublished non-precedential memorandum decision of the Superior Court, filed after May 1, 2019, may be cited for its persuasive value).

- 12 -

*Id*. at 1139-41 (citation omitted) (emphasis added); *see also Davis v. Mullen*, 773 A.2d 764, 770 (Pa. 2001) (recognizing that "pain usually follows injury" and addressing whether a jury's refusal to award pain and suffering damages is consistent with the evidence); *Hobbs v. Ryce*, 769 A.2d 469, 473 (Pa. Super. 2001) (holding that that verdicts awarding no non-economic damages are against the weight of the evidence when the injuries are undisputedly of the type that would involve pain and suffering).

Holsworth argues that the trial court erred in denying her post-trial motion for a new trial on non-economic damages. Holsworth maintains that Patel conceded liability, and the evidence established, without contradiction, that she suffered a traumatic brain injury and neck and back strains requiring medical treatment. Despite this, Holsworth asserts that the jury awarded $13,000 for future medical expenses while awarding zero dollars for past and future pain and suffering, a result that is contrary to both the evidence and human experience. Given these facts, Holsworth concludes that the jury's refusal to compensate her for pain and suffering shocks the conscience and warrants a new trial limited to non-economic damages.

The trial court concluded the verdict was within the jury's prerogative, stating: "The jury was free to believe Dr. Reinhardt's testimony that [Holsworth's] complaints were subjective and unrelated to the subject accident. The jury was free to believe [her] complaints were a continuation

of pre-accident medical problems to the same areas she subjectively complained about after the accident." Trial Court Opinion, 1/28/25, at 12-13.

We are constrained to conclude that the trial court abused its discretion when it denied Holsworth's motion for a new trial on non-economic damages based on the weight of the evidence. Patel conceded liability, leaving only causation and damages for the jury. The jury determined that ***Patel was the factual cause of Holsworth's injuries***. Since Patel did not contest liability, her admission required the jury to award Holsworth damages for injuries she clearly established.

In this regard, Holsworth's evidence of a traumatic brain injury was uncontroverted, and both parties' experts acknowledged that she sustained neck and back injuries in the accident which required treatment — treatment that the jury could reasonably infer would involve pain. ***See Casselli***, 937 A.2d at 1139-41. While Patel highlighted Holsworth's childhood medical history to argue a "pre-existing degenerative process," the record shows that these diagnostic studies and injuries occurred years before the 2019 collision, during her adolescence. By her own testimony, Holsworth was a three-sport high school athlete, and there was ***no evidence*** of ongoing treatment or residual impairment before the accident. Thus, the record does not support Patel's claim that a pre-existing degenerative process explained Holsworth's post-accident symptoms.

The jury nevertheless awarded $13,000 in **future medical expenses**, which necessarily presupposes some degree of pain and suffering for the uncontroverted traumatic head, neck and back injuries, yet awarded zero dollars for pain and suffering. The only basis upon which the jury could have awarded zero damages for pain and suffering would be a finding that Holsworth's undisputed traumatic brain, neck, and back injuries — despite requiring future medical treatment — resulted in no pain or suffering whatsoever in the past and would not cause any future pain or suffering. **See Casselli**, 937 A.2d at 1140. Therefore, this verdict is against the weight of the evidence. **See id**. at 1138-39.

While juries may categorize minor or transient injuries as a "rub of life," they may not ignore obvious injuries supported by uncontroverted medical evidence. **Lombardo**, 828 A.2d at 375; **see also Kennedy**, 816 A.2d at 1157; **Giko**, 296. A. 3d 649; **Casselli**, 937 A.2d at 1141. Given the conceded liability and the uncontroverted evidence of Holsworth's traumatic brain injury, neck injury, back injury, and ongoing impairment, and the treatment Patel conceded was reasonable for her neck and back injuries, the jury's zero award for non-economic damages is against the weight of the evidence and warrants a new trial on this issue. **See Casselli**, 937 A.2d at 1139-41.

Order affirmed in part, and reversed in part. Case remanded for a new trial limited to past and future non-economic damages. All other aspects of

the judgment, including the molded award of $15,535.33 for future medical expenses, are affirmed.  Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 10/15/2025